C. E. THORNE v. G. L. ALLEN.

June 7, 1898.

Nos. 10,664—(185).

**Farming on Shares—Lien for Advances—Chattel Mortgage—Division of Crop—Replevin—Waiver of Lien—Application of Payment.**

The plaintiff held a chattel mortgage on defendant's grain, and also held possession of the grain under a lien given to him to secure other advances made by him to defendant. Plaintiff, with defendant's consent, sold a part of the grain for $80, and retained the proceeds; but no application of them was expressly made by either party to the payment of the one debt or the other. Thereafter plaintiff surrendered the possession of the balance of the grain to defendant, and thereby waived his said lien, but still retained his said mortgage on the grain. Thereafter plaintiff brought replevin for the grain, and, on the trial, sought to apply the $80 in payment of the sum due for such other advances, and defendant sought to apply the same in payment of the mortgage debt. *Held*, it would be inequitable, after plaintiff had voluntarily relinquished his said lien, to apply the $80 on the mortgage debt, and that the same ought to be applied in payment of the sum due for the advances.

Appeal by plaintiff from an order of the district court for Wilkin county, C. L. Brown, J., denying a motion for judgment notwithstanding the verdict, or for a new trial. Reversed.

*Henry G. Wyvell* and *Lyman B. Everdell,* for appellant.

*Mathews & Wood,* for respondent.

CANTY, J.

The plaintiff let his farm to the defendant "on shares" for the season or year 1895, and sold to him certain live stock on credit for the sum of $300. By the contract of letting, defendant agreed to ·cultivate the farm, and· it was agreed that plaintiff should

have one-third and defendant two-thirds of the crops, but that the title to the crops should remain in plaintiff until division thereof, and that plaintiff should have the right to take and hold a sufficient portion of the share "that would, on the division of said crops, belong" to defendant to pay any and all advances made to him by plaintiff. The price of the live stock so sold was secured by a chattel mortgage executed by defendant to plaintiff on this and other stock, and on all defendant's share of the crops to be grown on this farm during the year 1895. The contract and chattel mortgage were both dated October 2, 1894. Defendant cultivated the farm, and in December, 1895, plaintiff brought this action to recover possession of all of said mortgaged live stock and 1,150 bushels of wheat and 1,240 bushels of oats raised on the farm.

On the trial, defendant had a verdict for the return of the property which had been taken in the action by plaintiff or for $973.20, the value thereof, in case a return cannot be had. On a motion for a new trial, the defendant remitted all of said sum in excess of $900, and from an order reducing the verdict accordingly, and denying a new trial, plaintiff appeals.

On the trial, plaintiff gave evidence tending to prove that defendant was indebted to him in the amount of several hundred dollars for advances (not covered by the chattel mortgage); and he claimed that he was entitled to the possession of the grain in question under the farm contract as security for these advances, as well as under the chattel mortgage as security for the mortgage debt. To defeat plaintiff's claim to this grain under the farm contract, defendant introduced evidence tending to prove that, prior to the commencement of the action, the parties had divided the grain, and that all of the grain here in question had been delivered by plaintiff to defendant as a part of the share of the latter. On this evidence the jury were warranted in finding that plaintiff had waived and lost his lien on the grain in question under the farm contract, and they have so found.

Plaintiff's other claim to this grain is that which he made under his chattel mortgage. The evidence tends to prove that the threshing of the grain raised on the farm was done at three different times, and that most of the wheat threshed at the first two

times was taken away by plaintiff from the threshing machine, and sold at the elevator without division; that plaintiff afterwards reported to defendant the latter's share of the price received; and that his share of the price received for the wheat sold at the second threshing was $80. So far as appears, neither party made any express application of this payment of $80 until the time of the trial of this action, when plaintiff sought to apply it in payment of said advances secured only by said farm contract, and defendant sought to apply it in payment of the mortgage debt. The court ruled that defendant might apply it in payment of the mortgage debt, and so charged the jury. This is assigned as error.

It will be observed that, when plaintiff sold the wheat represented by this $80, he held it under the lien given him by the farm contract, as well as under the chattel mortgage. A payment made from the proceeds of mortgaged property in the possession of the mortgagee must, as a general rule, be applied in payment of the mortgage debt. 2 Am. & Eng. Enc. (2d Ed.) 466. But the rule is equally strong that the proceeds of property held by a bailee on a lien must be applied to the satisfaction of the lien. Id. It was the grain threshed at the third threshing that was divided, of which defendant's share was delivered to him, as aforesaid. Plaintiff's lien on this grain under the farm contract was thereby devested. Plaintiff had thus voluntarily abandoned his lien under the farm contract after he had received the $80, and is it just or equitable to allow defendant afterwards to apply the $80 on the mortgage debt?

"In directing an application [of payment], the court will look first to the intention of the parties in making and receiving the payment; and it will not generally exercise its power to direct an application according to its own notion of justice and equity, so long as any intention of the parties to apply the payment can be ascertained with reasonable certainty." Id. 447.

"The intention to make a certain application of a payment may be implied from the circumstances attending the transaction. The intention to make the application may be implied from the conduct of the parties, either at the time of making and receiving payment, or thereafter. Application of a payment may be implied from the course of dealing between the parties, or facts and circumstances which imply a course of dealing." Id. 450, 451.

"When neither the debtor nor the creditor has manifested an in-

tention to make application of a payment, and no such intention can properly be deduced from all the circumstances of the case, the court will direct the application equitably to all parties concerned. This rule is necessarily a universal one, and, while all of the courts profess to recognize it to some extent, yet the question of what rules, if any, should be generally followed in order to arrive at an equitable application is attended with much contrariety of judicial opinion. How the application shall be made when no intention of the parties appears is a question of law, which should not be left to the determination of the jury. A large number of the authorities hold that the court should direct application, where no intention appears, according to the presumed intention of the parties. Those authorities that follow the rules of the civil law on this subject hold that, in directing the application of payments, the court is bound to carry out the presumed intention of the debtor." Id. 452-454.

"A great number of the authorities, following a strict construction of the common-law rule in favor of the creditor, hold that undirected payments should be applied by the court in a manner best calculated to preserve the interests of the creditor." Id. 455.

The rule which favors the debtor may be applied in proper instances where it will work equity, and the rule which favors the creditor may be applied in proper instances where it will work equity, but neither of these rules should be carried to an extreme or unreasonable length. It is clear that the defendant never attempted to make any application of this $80 payment until the time of the trial. Whether, from the conduct of the plaintiff in involuntarily releasing his lien under the farm contract, it can be held that he intended to apply, and did apply, the $80 as a payment on the advances secured by that contract, we need not consider. If it is a case where no application of the payment was made by either party, "the court will direct the application equitably to all parties concerned." Then, we are of the opinion that it is not now equitable to apply the $80 payment to the mortgage debt, or to allow the defendant so to apply it. After plaintiff has voluntarily surrendered a part of his security, it is not equitable so to apply this payment as to destroy the rest of his security.

This disposes of the case, and the order appealed from should be reversed, and a new trial granted. So ordered.