BOYER-VAN KURAN LUMBER & COAL COMPANY, APPEL-
LANT, v. COLONIAL APARTMENT HOUSE COMPANY ET
AL., APPELLEES.

FILED JUNE 26, 1913. No. 17,285.

Mechanics' Liens: PAYMENTS. A, the owner of an apartment house being built by B, a building contractor, under contract, entrusted B with a check for $750, with the proceeds of which B agreed to pay C, a materialman, $400, and other specified materialmen and laborers $350, and to return the receipts therefor to A. B deposited the check in a bank to his own credit in order to draw checks in favor of the respective creditors. Some time before, B had given to C, to whom he was indebted for lumber used in other buildings, an undated check for $670 to be filled out and cashed by C when notified by B that money had been deposited, from payments upon the other buildings, with which to pay this check. C, without being notified, dated the $670 check, presented it to the bank, and drew that amount out of the proceeds of the $750 check given by A. He refused to allow A any credit on his account, but applied the $670 on the prior indebtedness of B. *Held*, in this, an action against A by C to foreclose a mechanic's lien on A's building, that A was entitled to be credited with the $670 and interest.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*A. H. Murdock,* for appellant.

*Crane & Boucher* and *J. W. Woodrough,* contra.

LETTON, J.

This is an action to foreclose a mechanics' lien upon an apartment building in Omaha. A multitude of items are embraced in the account, but there seem to be only two matters actually in dispute. The pleadings are long and involved and will not be set out at length. Certain building contractors, named Woodward, agreed to construct an apartment house for Messrs. Crane and Rood. After the contract was made, the Colonial Apartment House Company became the owners of the property. The contractors entered into a subcontract with the plaintiff for lumber and material necessary in the construction of the building. The total amount furnished, for which plaintiff claims a lien, was $2,228.24. The defendants insist that they are entitled to two credits upon this account, which are the matters in dispute.

A credit of $750 was claimed by reason of the following circumstances. On January 15, 1910, there was due on the apartment building, according to the architect's estimates, $750. On that day Mr. Woodward applied to Mr. Crane, who was acting for the Colonial company, for this money. They figured up the various amounts due subcontractors and laborers, and found that $400 was due plaintiff for material furnished, and $350 to several specified laborers and materialmen. Mr. Crane then said he would write checks to the various creditors for the amounts due them, respectively, but Woodward suggested that the check be given to him, and he would pay the money to each of these parties himself. Woodward deposited Mr. Crane's check in his bank to the account of his firm, and wrote out checks in order to dispose of the $750 which had been entrusted to him for that purpose. Woodward and the plaintiff had had numerous dealings prior to the building of the Colonial apartment house, and Woodward was indebted to plaintiff for material supplied before this time for other buildings. It was Woodward's custom to procure estimates from time to time as work progressed on

these buildings, and to pay to plaintiff its proper proportion of the money received upon these estimates. Some months prior to January 15, Woodward had given two undated checks to plaintiff for material furnished in other buildings, one check being for $670. These checks were given with reference to material furnished upon other jobs, and were accepted by plaintiff with the agreement and understanding that Woodward would notify plaintiff when he received the architect's estimate and the money due upon the respective jobs, and would let the plaintiff know when it might cash these checks. After the talk with Crane, at which he had received the $400 to apply on the claim of plaintiff against defendant, Woodward called Mr. Van Kuran on the telephone, and told him he had some money for him. Van Kuran then, without further inquiry and without notification or permission from Woodward, filled in the date of "November 30, 1909," upon the undated check for $670, immediately presented it to the bank for payment, and thereby withdrew $670 of the $750 which had been given to Woodward by Crane to pay the specific amounts and parties named, including $400 to plaintiff. Before the check was cashed, Woodward's account was overdrawn $107.46, and by the payment of the $670 check the account was again overdrawn $27.46. The $670 thus obtained was applied by the plaintiff upon prior debts of Woodward for material used on other buildings, and no credit was given the Colonial company for any amount. The check was given to Woodward on Saturday, January 15, after banking hours. On Monday, January 17, before banking hours, Mr. Crane called up Mr. Van Kuran, and asked him if he had received the $400 that was sent to him on Saturday. Van Kuran told him he had, but when Crane asked for a receipt Van Kuran said he did not think a receipt was necessary, and told Crane "to fix it up with Woodward." Crane also testified that Woodward agreed to bring the receipt on Monday morning for the several amounts which were included in the $750 check. Crane testifies that afterward he had a conversation with Mr.

Boyer, in which he insisted upon receiving credit for the $670, but that Boyer said that Woodward had several accounts, and they had applied it.

The district court found upon this branch of the case in favor of defendants, and held they were entitled to credit for the amount withdrawn from the bank with interest. Plaintiff insists this was erroneous. It is said that Woodward was not a trustee, and that, therefore, plaintiff had the right to apply the money on whichever account of Woodward's it pleased. We are of the opinion that the money did not belong to Woodward, but that it was entrusted to him for a specific purpose, and that it was deposited by him for that purpose. Woodward was merely a messenger or bailee entrusted with the check for the purpose of paying the money represented thereby to the plaintiff and to the other parties named, in the specific amounts agreed upon, and for bringing back to Mr. Crane a receipt from each of the creditors for such specific amounts. The plaintiff was not authorized by Woodward to withdraw these funds from the bank, and had no right, under the previous agreement with Woodward whereby the undated checks were to be paid from the estimates upon the jobs for which the material was furnished, to fill in the date and present the check for payment at the bank at the time it did so. The plaintiff by this unauthorized act of withdrawal, and by refusing to credit the Colonial company with this money, wrongfully converted to its own use the $670 drawn from the bank. Under well-settled principles of law, it would have been liable to an action for money had and received, and it is equally bound to allow the owner of the fund credit upon its indebtedness to that extent.

It is urged that there was no consideration passing between Woodward and Crane, and therefore no trust relation was created. Even if Woodward were only a gratuitous bailee entrusted with the check for a specific purpose, this would not alter the conditions. Plaintiff was never authorized to use the undated checks to draw this

fund, and can predicate no rights as against the owner of the fund on the fact that possession of the undated check gave it the power to do so.

The next matter of which plaintiff complains is that the court erred in deducting $187.21 from plaintiff's account for lumber not finally used in the construction of the building. The deduction was made, it is said, upon the theory that certain lumber furnished was used for the constructing of scaffolding, runways, and a storage shed, while the building was being erected. The testimony shows that after the work on this building was completed there was a quantity of material which had been used for scaffolding, etc., a part of which had nail holes in it, and some of it was covered more or less with lime stains. This unused material was examined and checked up by Mr. Boyer and Mr. Woodward, and an itemized statement made. Woodward testified he had an arrangement with plaintiff by which it would take back material that was delivered upon the job and unused, with a discount for deterioration; that the lumber which was unused and checked up amounted to $240.96; and that part of this lumber was used on another building. There seems to be sufficient evidence to justify the district court in making the deduction, and the appellant has not affirmatively shown any error in that regard. Its contention that this court has held that, when the material was delivered upon the ground for use in the construction, its duty was discharged and it became entitled to a lien, as held in the cases cited, loses sight of the testimony as to the agreement that it was to be taken back or used in another job, and the fact that after the building was constructed it was sorted and checked over by Boyer and Woodward and used elsewhere.

We have found nothing in the record which convinces us that the judgment of the district court was wrong, and it is therefore

AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., not sitting.