NATIONAL SURETY COMPANY v. G. N. BERGGREN and Others.[1]

June 26, 1914.

Nos. 18,634—(130).

**Subrogation — right of incorporated surety.**

Plaintiff was surety on a bond executed by B. as principal to the state, conditioned that B. should pay as they became due all claims for labor and material furnished in the execution of a contract by which B. was to install an electric switchboard in a state building. B. did not pay a claim for material furnished, and plaintiff was compelled to and did pay such claim. Under the contract between the state and B, the state retained one-half the contract price until after completion of the work. After the bond was given and the work begun, B. borrowed money of a bank and gave the bank an order on the state for the money due under the contract. The state deposited the money in court. It is *held:*

(1) Plaintiff, having on compulsion paid the claim of the creditor of B. is entitled to equitable subrogation to the rights of such creditor in the fund retained by the state. Such rights are superior to those of the bank or its assignee.

(2) That plaintiff was a corporation engaged in the business of executing bonds as surety for a consideration or premium does not defeat its right to subrogation.

Action in the district court for Ramsey county against G. N. Berggren, Scandinavian American Bank, John Gorman and Frank Adsit to recover $321.45. The facts are stated in the opinion. The case was tried before Catlin, J., who made findings and ordered judgment in favor of defendant Adsit for the amount demanded. From an order denying its motion to amend the conclusions of law and or-

[1] Reported in 148 N. W. 55.

der for judgment or for a new trial, plaintiff appealed. Reversed with directions.

*Butler & Mitchell,* for appellant.

*R. A. Walsh,* for respondent.

BUNN, J.

The controversy in this case is between the plaintiff and the defendant Frank Adsit, and arises out of a contract entered into October 18, 1911, between the state of Minnesota and defendant Berggren by which contract Berggren agreed to furnish the material and perform the labor for the installation of an electric switchboard at the St. Peter State Hospital for the sum of $715. The contract provided that one-half of this sum should be paid upon delivery of apparatus and materials at the hospital, and that the balance should be withheld by the state until the completion of the work, and paid within 30 days thereafter. The contractor agreed to furnish to the state, contemporaneously with the execution of the contract, a bond in the sum of $540, conditioned upon the full and faithful performance of the contract. The following provision was contained in the contract:

"The contractor hereby agrees to refund to the owner all moneys which the latter may be compelled to pay in discharging any lien made obligatory in consequence of the contractor's default."

The bond provided for by the contract was executed and delivered October 24, 1911. Plaintiff was surety on this bond, which was conditioned upon the principal, Berggren, paying, as they became due, all just claims for labor performed, skill, tools, and machinery furnished in the execution of the contract, and upon his completing the contract according to its terms, and indemnifying the state from any costs, charge or expense that might accrue on account of the work.

For the purpose of procuring plaintiff to execute the bond as surety, Berggren signed an application, in which he agreed to at all times indemnify the plaintiff against any and all liability, damage, loss, costs, charges and expenses which plaintiff should or might at any time sustain or incur in consequence of executing the bond ap-

plied for, and that he would "pay over, re-imburse and make good to the company * * * all sums * * * which the company * * * shall pay or cause to be paid or become liable to pay" on account of the execution of the bond. In the application Berggren further agreed that "all payments specified in the above-mentioned contract to be withheld by the obligee until completion of the work, shall, as soon as the work is completed, be paid to the company—and this covenant shall operate as an assignment thereof—and the residue, if any, after re-imbursing the company as aforesaid, [shall] be paid to said applicant after all liability * * * has ceased to exist under the said bond." Another clause in the application gave the surety the right, in the event of Berggren's failure to comply with the contract in any particular, to take such steps as it might deem necessary or proper to obtain its release from liability upon the bond and to further indemnify itself against loss, and provided that all damage and expense sustained by the company in obtaining such release or in further securing itself against loss, should be borne and paid by the applicant. A further covenant gave the surety the exclusive right to determine whether any claim against it and the principal should be defended, and provided that the decision of the surety should be final.

The Stromberg-Carlson Telephone Manufacturing Co. furnished certain materials to Berggren for the performance of the contract. These materials were furnished at the agreed price of $345, and were actually used by Berggren in the work. He wholly failed and neglected to pay, and the Stromberg-Carlson Co. made a claim against plaintiff for the amount. Plaintiff in good faith paid the claim, pursuant to the provisions of the bond, deciding in good faith that it was liable, and that the claim should not be defended. Plaintiff has never been reimbursed for the sum so paid.

The work provided for in the contract was completed and accepted June 14, 1912, and there then became due under the contract the part of the contract price withheld by the state, amounting to $321.-45. The controversy in this case is over this sum, the question being whether plaintiff or defendant Adsit is entitled to it, the sum having been deposited by the state with the clerk of the district court.

The facts thus far stated form the basis of plaintiff's claim to the fund deposited. Defendant Adsit's claim arises from the following facts: November 23, 1911, after the bond was given and after work had begun under the contract, Berggren for value received gave his note for $715 (the amount of contract price) to defendant bank, and at the same time delivered to the bank an order or draft on the state for this sum, on account of the contract. The state paid the bank the part of the contract price that was due before the completion of the work. The bank transferred the note and order or draft to the defendant Adsit, who is the owner thereof.

Plaintiff brought this action demanding judgment that the clerk of the court pay to it the sum of $321.45 so deposited. Defendants Berggren and the bank answered disclaiming any right to the fund. Defendant Adsit claimed the right to have it paid to him. The issues were tried to the court without a jury and a decision rendered in favor of defendant Adsit. Plaintiff moved to amend the conclusions of law so as to order judgment in its favor, or for a new trial. The motion was denied, and plaintiff appealed.

Has plaintiff, under the provisions of the bond and of the application therefor, a right to the fund that is superior to the right of defendant Adsit, who claims under the order given the bank by Berggren?

Plaintiff bases its claim of priority upon the doctrine of subrogation, and also upon the assignment of the fund made by Berggren in his application for the bond. Defendant Adsit insists that plaintiff is not subrogated to the rights of the creditor whose claim it paid, for the reason, as we understand it, that the contract was one of insurance, rather than suretyship, and that the assignment gave no right of priority over the bank.

In the view we take of the case it is not necessary to consider the validity or effect of the assignment contained in the application. We are satisfied that the doctrine of subrogation applies and gives plaintiff the prior right to the fund.

It must be and is conceded that the Stromberg-Carlson Co., had its claim not been paid by plaintiff, would have had a right to be paid out of the fund retained by the state that would be superior to any

assignment of the fund by Berggren. It is clear that plaintiff was obliged, under the terms of the bond, to pay this claim. It would seem to follow that upon such payment plaintiff was subrogated to all the rights of the Stromberg-Carlson Co. That this would be so had the bond been executed by an individual surety instead of by a "surety company" seems to be conceded by plaintiff and by the trial court in its memorandum. All the requirements of the doctrine of subrogation exist here; the debt of Berggren due to the third party was paid by plaintiff, and plaintiff paid such debt on compulsion and not as a mere volunteer. Under such circumstances the right of the surety to assert the equitable doctrine of subrogation is elementary. Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. ed. 412. In the case cited, and in Henningsen v. United Fidelity & Guaranty Co. 208 U. S. 404, 28 Sup. Ct. 389, 52 L. ed. 547, the facts are substantially identical with those in the case at bar, except that in the former case the surety was an individual. In each it was held that the equity of the surety who had been compelled to pay and had paid claims against the principal was superior to that of one who loaned money to the contractor to be by him used as he saw fit, either in the performance of his contract or in any other way. The language of the circuit court of appeals in the Henningsen case, approved and adopted in the opinion of the Supreme Court, fits the present case exactly:

"Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made to Henningsen. Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation; but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money."

We are unable to agree with the opinion of the trial court that because plaintiff was in the business of acting as surety and executed the bond in question for a premium paid, the equitable doctrine of subrogation was not available to it. Whether we call the contract one of suretyship or in effect a contract of insurance would be material, if we were called upon to construe ambiguous language in it. George A. Hormel & Co. v. American Bonding Co. of Baltimore,

112 Minn. 288, 128 N. W. 12, 33 L.R.A.(N.S.) 513. But the name we give the contract does not affect the right of subrogation. There can be no doubt that the relation between Berggren and plaintiff was that of principal and surety, though as to the state and those who furnished material or performed labor, it may correctly be said that plaintiff insured the performance of his contract by Berggren. The controlling facts are that plaintiff was compelled to pay and did pay a claim against the principal. We wholly fail to appreciate the argument that attempts to deny the right of subrogation to the surety, who is in the business of acting as surety and receives a consideration for so acting, while granting such right to a surety who is not in the business regularly, or who may not receive a money consideration. No case is called to our attention where this distinction is attempted, and we perceive no basis for it. Indeed the instances are numerous where an insurance company, that has been compelled to pay a loss caused by the wrong doing of a third person, has been granted the right of subrogation to the claim of the insured against the wrongdoer. 19 Cyc. 893.

We hold that plaintiff was entitled to be subrogated to the rights of the creditor whose claim it paid. It is clear that this right, as between plaintiff and Berggren or those claiming under him, took effect as of the date of the contract creating the relation of principal and surety, that is, the bond. McArthur v. Martin, 23 Minn. 74. The order given by Berggren to the bank was later in point of time, could not prejudice the rights of the creditor whose claim plaintiff paid, and therefore could not defeat the right of plaintiff to the remedies that such creditor had against Berggren and the fund retained by the state.

The order appealed from is reversed with directions to the trial court to amend its conclusions of law in accordance with this opinion, and to order judgment for plaintiff.