NEW AMSTERDAM CASUALTY COMPANY v. ADOLPH WURTZ
AND OTHERS.[1]

May 7, 1920.

No. 21,718.

**Advances by bank to public building contractor — right of surety to subrogation as against bank.**

A contractor agreed to deposit in the defendant bank all the money he received for constructing a school building. The bank agreed to advance the money he might need to enable him to complete the building and to take his notes for the amounts advanced. Money so advanced, as well as money received on the contract, was to be used only to pay claims of laborers and materialmen. Pursuant to such agreement, the bank took the contractor's notes for $5,000 and an order on the school district for that amount and advanced $4,500 to pay claims for labor and materials. The contractor had given the bond required by section 8245, G. S. 1913, and plaintiff was surety thereon. He failed to pay claims of laborers and materialmen and also failed to pay his notes to the bank. The school district, having paid the bank's order, was adjudged liable to the surety only to the extent of the unpaid balance of the contract price, and the surety was required to pay the remaining claims of the laborers and materialmen. *Held*:

(1) That the right of the bank to retain the money received from the school district is superior to the right of the surety to be subrogated to the interest which laborers and materialmen had in the money retained by the school district until the contractor completed the building.

(2) Under the agreement between the bank and the contractor the former was not a volunteer in advancing money to the latter. National Surety Co. v. Berggren, 126 Minn. 188, distinguished.

(3) The school district was bound to make payment of the contract price in accordance with its contract and neglected no duty it owed the surety in honoring the bank's order, although the surety had theretofore notified it not to pay orders given by the contractor.

[1]Reported in 177 N. W. 664.

Action in the district court for Hennepin county against Adolph Wurtz, Independent School District No. 1, Lincoln County, First National Bank of Lake Benton, and the holders of claims of laborers and materialmen, that to the extent of $1,821.18 plaintiff be subrogated to the rights of claimants in the funds in the hands of defendant school district and defendant bank; that the bank be required to refund to School District No. 1 the sum of $4,735.22; that the court decree that the funds in possession of defendant school district and of defendant bank be declared a fund for the payment solely of the just claims for labor and material proven in the action; that defendant claimants be required to present and prove their respective claims and when correctly ascertained the defendant school district be required to pay them to the extent of the funds in its possession; that such funds be used for no other purpose; that after the fund became exhausted the court should adjudge whether plaintiff was obligated under its bond to pay any deficit, and that Adolph Wurtz be adjudged to have no right to the funds. The case was tried before Clague, J., who made findings and ordered judgment in favor of plaintiffs for $3,235.53 against defendant school district, and in favor of defendant bank. From an order denying its motion to amend the findings and conclusions of law or for a new trial, New Amsterdam Casualty Company appealed. Affirmed.

*Henry Deutsch* and *John O. Loeffler,* for appellant.

*Morris Evans* and *Robinson & English,* for respondents.

LEES, C.

Appeal from an order denying a motion for a new trial, after a trial by the court without a jury and findings adverse to plaintiff.

On July 17, 1917, one Wurtz entered into a contract with defendant school district for the construction of a public school building at Lake Benton. The contract price was $52,381, 85 per cent of which was payable in instalments upon estimates to be made by the supervising architect during the progress of the work, and 15 per cent of which was to be withheld until the building was completed and accepted. The contractor furnished the statutory bond required of public contractors, with the plaintiff as surety thereon. Wurtz completed the building, except in certain minor particulars not here material, and it was accepted August

10, 1918. There was then due him $7,970.75, which was the unpaid portion of the contract price.

On September 13, 1917, Wurtz and the defendant bank agreed that the former should deposit with the bank all money he received on the architect's estimates, and that, if it was insufficient to enable him to carry on the work, the bank should make advances to him, crediting the amount thereof to his account and taking his notes therefor. It was agreed that the money credited to this account should be drawn out only to pay for labor and material furnished for the construction of the school building. The agreement was performed by both parties.

On February 7, 1918, Wurtz had insufficient money to carry on the work. The bank took his notes for $5,000 and credited his account as agreed. At the same time it took from him an order on the school district for the payment of the amount of the notes and interest. When the building was accepted nothing had been paid on the notes. The sum of $4,500 had been advanced by the bank and paid out to laborers and materialmen in accordance with the original agreement. On October 24, 1918, the school district honored the order by paying $4,735.22 to the bank.

On July 10, 1917, Wurtz undertook, in writing, to indemnify plaintiff against any loss or expense it might incur as surety on his bond, and agreed that, if default occurred in the conditions of the bond, it should have the right to receive all reserve percentages which might become due under the contract secured by the bond.

When the school building was accepted, Wurtz owed large sums to laborers and materialmen, which he could not pay, and plaintiff is liable to them as surety on his bond.

These facts are embraced within the findings, which are not challenged on this appeal.

This action was brought against Wurtz, the school district, the bank and the holders of claims for labor and material. The prayer for relief was that the bank be required to refund $4,735.22 to plaintiff or to the school district, that the amount retained by the school district be applied upon the claims of laborers and materialmen, and that they be required to present and prove their claims against plaintiff.

The court gave judgment in favor of plaintiff and against the school

district for $3,235.53 and interest, found in favor of the bank, and found the amount due to laborers and materialmen, and gave them judgment against plaintiff.

1. Plaintiff contests the right of the bank to retain the money it received from the school district, upon the theory that its liability for the payment of the claims of laborers and materialmen entitles it to be subrogated to their rights and that, by virtue of such subrogation, it is entitled to the money.

In Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. ed. 412, it was said that

"A stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created."

In National Surety Co. v. Berggren, 126 Minn. 188, 148 N. W. 55, it was held that a materialman whose claim has not been paid has a right to be paid out of the fund retained by the owner until the contractor completes his work; that such right is superior to an assignment of the fund by the contractor, and that, when the surety on the contractor's bond pays the claim, it becomes subrogated to the rights of the materialman in the fund.

Plaintiff insists that these principles are applicable to the facts set forth in the findings and entitle it to a recovery from the bank. It is to be noted that the money advanced by the bank discharged the obligation of the contractor and his surety to the extent that it sufficed to pay the claims of laborers and materialmen. There is authority to the effect that the bank would have become subrogated to the rights of such claimants in the fund retained by the school district, if it had taken an assignment of the claims paid with the money it advanced. United States v. Rundle, 107 Fed. 227, 46 C. C. A. 251, 52 L. ed. 505. It must be conceded that the rights of such claimants in the fund were superior to plaintiff's rights. Although the bank took no assignments of the claims paid, its failure to do so does not alter the fact that, in advancing its money to the contractor for the purpose stated, it relieved plaintiff from its obligation to pay them. If plaintiff may now compel the bank

to refund, it will be the gainer and the bank the loser in a double sense. If the bank must pay the amount advanced a second time, it will lose $4,500 and interest, and with this money plaintiff will be able to satisfy unpaid claims for which it is responsible, and thereby be the gainer at the expense of the bank. A mere statement of the result that would follow if plaintiff's contention were sustained demonstrates its want of equity.

We have examined the cases cited by plaintiff. Running through nearly all of them we find a clear distinction in the facts when compared with the facts in the case at bar.

In National Surety Co. v. Berggren, supra, the bank made a loan to a contractor, when it was under no obligation to make it and he was free to use the money borrowed as he saw fit. In Prairie State Bank v. United States, supra, and in Henningsen v. U. S. Fidelity & Guaranty Co. 208 U. S. 404, 28 Sup. Ct. 389, 52 L. ed. 547, the bank was a mere volunteer under no legal obligation to loan its money to the contractor. It was remarked that the surety, in paying the debts of the contractor, acted on compulsion and not as a volunteer. It was not at liberty to elect whether it would or would not be bound, while the bank was at liberty to refuse to make the loan. In the present case the bank was bound to finance the contractor. Its obligation to him was no less clear than plaintiff's obligation to laborers and materialmen.

In Hardaway v. National Surety Co. 211 U. S. 552, 29 Sup. Ct. 202, 53 L. ed. 321, the money assigned by the contractor to third persons had been earned prior to his making a contract with them for the completion of a government lock and dam, which he had partially constructed when overtaken by financial difficulties, and it was held that his surety had a superior right to the fund. Here again it will be observed that the persons who took over the work were volunteers.

In Wasco Co. v. New England Eq. Ins. Co. 88 Ore. 465, 172 Pac. 126, L.R.A. 1918D, 732, Ann. Cas. 1918E, 656, after a statement of the doctrine of subrogation, the court said:

"The contractor can neither supplant this equity [the surety's] nor strip it of its priority by borrowing money from some person not obliged to lend and assigning the funds to secure the loan."

And substantially the same statement is found in First Nat. Bank v.

Pesha, 99 Neb. 785, 157 N. W. 924. In Derby v. U. S. Fidelity & G. Co. 87 Ore. 34, 169 Pac. 500, 503, the bank loaned money to and became the general creditor of the contractor, and there was no proof that the money went into the building.

We think the distinction above noted may justly be drawn, and that one who has made an agreement with a contractor such as there was in the present case stands in a different position from one who voluntarily loans money to him.

First Nat. Bank v. City T. S. D. T. S. Co. 114 Fed. 529, 52 C. C. A. 313; Union Stone Co. v. Freeholders, 71 N. J. Eq. 657, 65 Atl. 466; Stehle v. United Surety Co. 107 Md. 470, 68 Atl. 600; and First Nat. Bank v. School District, 77 Neb. 570, 110 N. W. 349, are cases where the contractor abandoned the contract and the surety stepped in and completed it and was held to have thereby acquired the rights which the obligee in the bond would have acquired had it done the work. In the case at bar the surety has not succeeded to the rights of the school district by performing an abandoned contract. Fidelity & Deposit Co. v. Stafford, 93 Kan. 539, 144 Pac. 852, presents the same situation, and yet the bank was there allowed to retain a portion of the money it received on the contractor's order.

The equities are clearly with the bank, and equity is of the essence of the doctrine of subrogation. Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. 566; Northern Trust Co. v. Consolidated Ele. Co. 142 Minn. 132, 171 N. W. 265, 4 L.R.A. 510.

We hold that upon the facts here presented plaintiff's right of subrogation is not superior to the bank's right to retain the money, and that the learned trial court correctly decided the controversy in the bank's favor.

2. As to the school district, we fail to discover any foundation for a claim against it. All that it has paid on its contract or is yet to pay has gone or will go towards satisfying the claims of laborers and materialmen, for which plaintiff is responsible as surety for the contractor. The contract provided that final payment should be made within 30 days after the completion of the work and that the entire contract price should be paid to the contractor, that the architect's certificates should

be issued to him, and that all payments should be due when the certificates were issued.

In June, 1918, plaintiff served two different notices on the school district, directing it not to pay out any more money to laborers or materialmen or to take up orders given by Wurtz, but under the rule laid down in American Surety Co. v. Board of Co. Commrs. of Waseca County, 77 Minn. 92, 79 N. W. 649, the school district continued to be bound to make payment of the contract price in accordance with the terms of its contract and neglected no duty it owed the surety in honoring the order Wurtz gave the bank, although previously notified not to pay his orders.

The order denying a new trial is affirmed.