## BARRETT BROTHERS COMPANY v. COUNTY OF ST. LOUIS.[1]

November 27, 1925.

No. 24,908.

**Surety's equity of subrogation attaches to all earnings of building contractor.**

The right of a building contractor's surety to subrogation takes effect as of the date of the suretyship. So the resulting equitable assignment of the principal's rights and remedies to the surety, when completed by the surety's performance of his principal's obligations, relates back to and is effective as of the date when the surety first obligated himself as such. Thereby the surety is given precedence over an assignment by the contractor of his earnings to a stranger having no equity in addition to and support of his assignment. It follows also that the surety's right of subrogation attaches to the entire earnings of the principal and not alone to the "reserved balance" for which provision happens to be made by the contract.

See Subrogation, 37 Cyc. pp. 427, 428.

See notes in 14 L. R. A. (N. S.) 457; L. R. A. 1918A, 937; 21 R. C. L. p. 1114; 3 R. C. L. Supp. p. 1216.

Action in the district court for St. Louis county. The case was tried before Dancer, J., who ordered judgment in favor of Maryland Casualty Company, the surety. Plaintiff appealed from so much of the judgment as decreed the surety to be entitled to $5,782.24. Affirmed.

*Boyle & Montague,* for appellant.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* for respondent.

STONE, J.

Action on an assignment of the earnings of the builder under two contracts with the county of St. Louis for the construction of public highways. Other issues involving other parties were litigated be-

[1]Reported in 206 N. W. 49.

low, but the only remaining question is one of priority as between plaintiff's assignment and the surety's equity of subrogation. The county and the contractors were the original defendants, the claims of certain laborers, materialmen and Maryland Casualty Company, the surety, having been litigated on complaints in intervention. After findings and an order for judgment in favor of the surety, plaintiff appeals from the judgment.

The contractor was the Mountain Iron General Contracting Company, a copartnership. Its contracts with the county of St. Louis for the two jobs in question and the statutory bond of the surety took effect in January, 1922. The contracts were in the form then in use by the State Highway Department. Although they did not expressly require the contractor to pay for all of the labor and materials used in the work, they did obligate him "to furnish" all such materials and "perform all the work and labor" required to complete the jobs according to plans and specifications which, by reference, were made a part of the agreements. The particular specifications for the two jobs were in evidence below and are before us. The general specifications are not in evidence and we do not consider them except insofar as it is conceded that they called for the payment to the contractor, on progress estimates, of not to exceed 85 per cent of the moneys earned by him, and the retention of the remaining 15 per cent pending completion of the work to the satisfaction of the county. We assume that the contract in that respect availed itself of the unnecessary permission of section 22, chapter 323, L. 1921, under which "the county board may agree * * * to pay the contractor, on account of the contract price, an amount not exceeding eighty-five per cent of the value of the work from time to time actually completed, as shown by monthly estimates thereof, based on the contract price." Neither the contracts, so far as they are before us, nor the statute, says that this reserved percentage is for the benefit of laborers, materialmen or the contractor's surety, an omission which, so far as the latter is concerned, we consider immaterial.

Plaintiff, a wholesale grocer, furnished the contractor a large quantity of provisions for use not only on the jobs in question, but on others as well. It has no rights under the contractor's bond. Its only claim is under the assignment (bearing date of April 21, 1922), from the contractor of all of his earnings under the two contracts. That assignment is absolute in form, and, when this action was commenced to enforce it, there was due from the county to the contractor $5,782.24, which happened to be $2,190.64 more than the retained percentage of $3,591.60. Plaintiff's demand is for only $828.21.

Plaintiff makes no claim upon the reserved percentage, but argues that its assignment puts its title to the earnings of the assignor, over and above the reserved percentage, beyond attack by the surety. That position is based upon Dowling v. City of Seattle, 22 Wash. 592, 61 Pac. 709; Puget Sound State Bank v. Gullucci, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A, 767; Maryland Casualty Co. v. Washington Nat. Bank, 92 Wash. 497, 159 Pac. 689; N. W. Nat. Bank v. Guardian C. & G. Co. 93 Wash. 635, 161 Pac. 473, Ann. Cas. 1918D, 644; The Title G. & S. Co. v. First Nat. Bank, 94 Wash. 55, 162 Pac. 23; Van Doren R. & C. Co. v. Guardian C. & G. Co. 99 Wash. 68, 168 Pac. 1124. Those cases, if followed, would compel adoption of the argument for appellant. They hold in substance (see particularly Dowling v. Seattle) that, where a public contractor defaults, his surety has no rights "in or to the fund earned and assigned by the contractor," in excess of the "reserved percentage," i. e. whatever portion of the builder's earnings could be or were reserved by express provision of the contract, for the protection of the owner, surety, laborers and materialmen or all of them.

We have examined those cases with deferential care and must disagree so far as they deny the surety's equity of subrogation any application to the earnings of his principal in excess of the reserved percentage. The Washington rule seems not to have been followed to any great extent elsewhere. See annotation of Labbe v. Bernard [196 Mass. 551, 82 N. E. 688], in 14 L. R. A. (N. S.) 457.

To sustain that rule, a distinction must be made between two parts of the same fund, the earnings of the contractor being the

fund and the two otherwise indistinguishable parts consisting of the reserved percentage on the one hand and the excess on the other. In this case, the former is 15 per cent and the latter 85 per cent of the total. The distinction, if allowed, makes the surety's equity of subrogation, which in principle is applicable to all rights of the contractor, effective in practice on only 15 per cent of those rights. At least it would enable the contractor, by assignment, to deprive the surety of 85 per cent of the fund, *all* of which he is otherwise entitled to claim as subrogee.

That result disregards the fact that the surety's equity of subrogation attaches to the contract and the prospective earnings of the contractor thereunder at the very moment he becomes surety. The right of subrogation and its automatic equitable assignment "relate to the date of the suretyship, as against the principal and those claiming under him." McArthur v. Martin, 23 Minn. 74. That "equitable assignment" to the surety of the "principal's rights and remedies" when completed by the surety's performance of his principal's obligation "relates back * * * to that earlier time" when the surety first obligated himself as such. Labbe v. Bernard, supra; Prairie State Nat. Bank v. U. S. 164 U. S. 227, 17 Sup. Ct. 142, 41 L. ed. 412. See also Benson v. Saffert-Gugisberg C. Const. Co. 159 Minn. 54, 198 N. W. 297; 161 Minn. 269, 201 N. W. 424.

In this case the contracts and bonds took effect at the same time. In consequence and from that moment, the rights of the contracting parties, the builder and the county, were qualified insofar as they became subject to the surety's equity of subrogation. It follows that there was no part of the prospective earnings, whether reserved or unreserved, which the contractor could assign to a mere stranger, such as plaintiff, having no independent equity, and thereby given to the assignee a right superior to that of the surety. That is the precise holding, as we understand the decision, in Henningsen v. U. S. F. & G. Co. 208 U. S. 404, 28 Sup. Ct. 389, 52 L. ed. 547, where the surety of a government building contractor was held entitled to *all* of the earnings of a contractor as against the latter's assignment to a creditor. True, the effect of the "reserved percentage" provi-

sion, if any, of the controlling contract was not considered. But is it not clear that any other holding, based upon such a provision, subjects the surety's highly valuable and obviously moral right of subrogation to easy destruction by the mere omission of any provision for a reserved percentage? Where nothing is agreed to be reserved, the surety as a subrogee has no recourse, if it is to be held that his right can attach only to earnings which are reserved or subject to reservation by the contract.

We attach no importance to the absence of lien rights or the fact that the county was not legally liable to laborers and materialmen or that the contract did not expressly require the contractor to pay them. There is merit in the argument that the contractor's obligation to "furnish" materials and "perform" the labor could not be fulfilled without payment for such material and labor by him. But all else aside, the bond of the surety was required by statute, G. S. 1923, § 9700, under which, without the bond, the contract itself would not have been "valid for any purpose." Complying with the conditions of its bond, the surety has performed the obligation of the principal to pay laborers and materialmen. It is thereby subrogated to the rights of its principal to collect the entire balance due from the county so far as required for its protection. Plaintiff's assignment can have no effect as against that right because, as we have seen, it relates back to the date of the suretyship and was merely matured by the surety's performance of the principal's obligation.

There is nothing in our recent decision of Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, which even touches the instant problem. The only question there was whether a materialman, not otherwise restricted, was prevented from applying on a prior indebtedness money paid by his debtor, simply by knowledge that the money had been earned under a contract with some of the defendants and guaranteed by another as surety. There was no question as between surety and a subsequent assignee of the principal. The money had been earned by and paid to the contractor. It was his money then to do with as he pleased, and having paid it to a creditor, the latter's rights were not affected by mere knowledge of the source of

the payment. That is all there is to that case and it is obviously different from the issue here presented as between a surety and a subsequent assignee of the contractor.

This case is equally unaffected by Nat. Surety Co. v. Berggren, 126 Minn. 188, 148 N. W. 55; New Amsterdam Casualty Co. v. Wurtz, 145 Minn. 438, 177 N. W. 664; or Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738. In none of them was there any occasion to distinguish between the reserved and unreserved portions of a contractor's earnings and no such attempt was made. In the Wurtz and Ganley cases was present an equity, absent here, arising from the fact that the advances made by the assignees of the contractors *all* went to laborers and materialmen. To what extent was liability of the surety prevented or reduced? So it was obviously inequitable to give it the double advantage of retaining that benefit and also recovering from the assignees the moneys which had created it. Having gotten full benefit once when the moneys received by the assignees were paid on labor and material claims, the surety was refused a simple duplication of that advantage by denying him a recovery from the assignors of the moneys so paid.

Order affirmed.