## FIDELITY & DEPOSIT CO. OF MARYLAND v. UNION STATE BANK OF MINNEAPOLIS et al.

District Court, D. Minnesota, Fourth Division.
August 26, 1927.

1. **Banks and banking** ☞134(8)—**Bank applying deposits of partnership, which used same account with corporation, to corporation's note, held not liable to surety for partnership for misapplication of funds.**

Where same bank account was used by partnership and by members of partnership constituting corporation, bank which without knowledge of agreement between partners and surety that proceeds of checks were to go to furnishers of material for carrying out partnership's building contract, applied checks payable to partnership to note of corporation, was not liable to surety of partnership on building contract, on theory that it had taken funds of partnership and applied them to corporation's debt.

2. **Subrogation** ☞36—**Right of contractor's surety, paying claim against contractor, to retained percentages, is superior to that of contractor's assignee.**

Where surety on contractor's bond pays claim it was obligated to pay if principal did not, it has right to retained percentages, which is superior to that of assignee of fund, and such right dates back to time of issuance of bond.

3. **Principal and surety** ☞113—**Contractor, under contract providing for retained percentages, can use money paid unconditionally without its being subject to surety's equity.**

Under contract providing for retained percentages and payment on architect's certificate, where contractor is paid money unconditionally, he may use it in any way he pleases, without its being subject to any equity of his surety.

4. **Subrogation** ☞35—**Bank, applying money deposited by contractor on note without knowledge of agreement that it was to pay materialmen, held not liable to contractor's surety.**

Where surety on public contractor's bond received checks of employer for final amount due contractor, and later surrendered them to contractor, to be deposited in bank on condition that contractor's checks to materialmen should be paid from proceeds thereof, it waived its right of subrogation, and bank, without knowledge of such arrangement, applying proceeds to note of contractor due it, was not liable to surety.

5. **Subrogation** ☞29—**Subrogation cannot be used to recover money legally paid to persons without notice to satisfy just claims prior to maturing of right of subrogation.**

Doctrine of subrogation cannot be used to recover money legally paid to persons having no notice, in satisfaction of just claims, prior to maturing of any right of subrogation.

In Equity. Suit by the Fidelity & Deposit Company of Maryland against the Union State Bank of Minneapolis and others. Dismissed.

Daniel F. Foley and Joseph J. Granbeck, both of Minneapolis, Minn., for plaintiff.

Paul J. Thompson and H. V. Mercer, both of Minneapolis, Minn., for defendants.

JOHN B. SANBORN, District Judge. On June 1, 1922, Arthur Evenson and Hjalmar Utterberg, copartners as Evenson & Utterberg, entered into a contract with the Independent School District of Virginia to construct the Lincoln School at Virginia, Minn., for $123,500, to furnish and pay for the necessary labor and material, and to complete the building by January 1, 1923. On June 5, 1922, they furnished, with the plaintiff as surety, the requisite statutory bond for the performance of the work and the payment of all claims for labor and material. In their application to the plaintiff for the bond, they agreed "to assign, transfer, and set over, and does or do hereby assign, transfer, and set over, to the company, such assignment to become effective as of the date of said contract bond, but only in event of any such abandonment, forfeiture, or breach as aforesaid, * * * any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture, or breach, or that thereafter may became due." The application was not filed with the school district, nor did it have notice thereof until October 22, 1923. Under the terms of the contract, the contractors were to be paid upon architect's certificates in periods of not less than 15 days, in amounts equal to 85 per cent. of the value of the work and materials incorporated in the building, less amounts previously paid; final payment to be made within 30 days after completion and acceptance of the work. The last work was performed by the contractors about October 23, 1923, and final payment was made on that date, except for $4.18 paid October 28, 1924.

Mr. Sullivan was attorney and adjuster for the plaintiff. In September, 1923, he was notified that Evenson & Utterberg had requested that the plaintiff enter into some arrangement whereby the percentages retained by the school district might be used in the execution of their contract. About the same time, he learned that bills for labor and material remained unpaid. He, for the plaintiff, approved certain orders upon the school district, signed by Evenson & Utterberg, for payments to materialmen, and on September 20th notified the school district to that effect. On September 26th the school district advis-

ed him that payments would be made only to the contractors.

On October 4th Mr. Kelly, the architect of the school district, notified Mr. Sullivan that on the following Tuesday the building would be in such condition that nearly the full contract price could be paid to Evenson & Utterberg; that the balance due them was $18,225; that "there is outstanding to our knowledge $13,785, and we would like to know whether it would be satisfactory to you if we would issue to Evenson & Utterberg a certificate." October 5, 1923, Mr. Sullivan replied: "As I understand it, the contract has not been entirely completed, and for that reason the school board will require the consent of this company, as surety, to making the final payment. This company hereby consents to making the payment indicated in your letter of October 4th, upon the express condition, however, that the check for said amount drawn to the order of the contractors be delivered to me."

On October 13th the school district sent to Mr. Sullivan four checks, on four Virginia banks, aggregating $14,923.34, payable to "Evenson & Utterberg." About two days after the checks were received, Evenson called on Mr. Sullivan and was informed that he was holding the checks; that, under instructions which he had received from the plaintiff, he was required to see that the proceeds were used for paying for materials furnished for the Lincoln School; that if Evenson & Utterberg would deliver checks to him for unpaid bills, he would deliver the school district checks to them, which were to be deposited to their account for the purpose of meeting the checks given to Mr. Sullivan for materialmen. Evenson said he would have the checks sent over. On Saturday, October 20th, both Mr. Evenson and Mr. Utterberg called at his office and delivered six checks for the amount of material bills, which checks were drawn on the Union State Bank of Minneapolis, one of the defendants, and signed "Evenson & Utterberg, Inc., by Hjalmer Utterberg, Secretary and Treasurer." The total of these checks was $10,550.41. Mr. Sullivan mailed them to the respective payees.

When Mr. Utterberg delivered these checks to Mr. Sullivan, Sullivan gave him the four checks of the school district. Utterberg said he would go to the bank and deposit them. He did go to the bank, the checks were indorsed, "Evenson & Utterberg, Inc., by H. Utterberg, Sec. & Treas., Arthur Evenson, Pres.," and were deposited to the account of Evenson & Utterberg. This was on a Saturday. On Monday, October 22d, Mr. Sullivan

was advised by Utterberg that the bank had applied $11,023.53 of this deposit to the payment of a note given by Evenson & Utterberg to the bank. The school district was immediately notified to stop payment of the four checks by Mr. Sullivan, and was also notified of the assignment of retained percentages contained in the application. The four banks upon which the checks were drawn were directed by Evenson & Utterberg to stop payment. Payment was not stopped, and the checks were actually paid by the banks on which they were drawn October 24th.

On Tuesday, October 23d, Mr. Foley, attorney for the plaintiff, and Mr. Sullivan talked to Mr. Struthers, the cashier of the bank. They informed him that the plaintiff was surety on the bond of Evenson & Utterberg; that the checks of the school district had been given to it to cover claims for labor and material furnished on the Lincoln School; that the plaintiff claimed the proceeds of the checks, or so much thereof as would be necessary to pay claims for labor and material; that the school district checks which had been deposited by Evenson & Utterberg had been delivered to them by the plaintiff for the purpose of meeting checks payable to materialmen. No figures were given to Mr. Struthers as to the total amount of unpaid bills or the total amount of checks issued by Evenson & Utterberg, but he was advised that an attempt had been made to stop the payment of the checks of the school district, and that these checks represented retained percentages and constituted money of the plaintiff for the purpose of paying claims. Mr. Struthers said he had the money and was going to keep it; that Evenson & Utterberg had been promising for some time to pay the note out of money to be received from the school district on the contract.

It appears that Mr. Sullivan had no knowledge of the note held by the bank at the time he delivered the school district checks to Evenson & Utterberg, and that the bank had no knowledge of the arrangement between Evenson & Utterberg and Mr. Sullivan until October 23d, although it did know that the checks deposited represented payments under the contract for the construction of the Lincoln School. Two of the checks given by Evenson & Utterberg to Mr. Sullivan for materialmen were paid, aggregating $1,462. The others were not paid. Evenson & Utterberg were insolvent. The plaintiff was subsequently obliged to pay, and did pay, labor and material bills aggregating $15,178.12. The plaintiff received the final pay-

ment from the school district of $3,004.18, and was actually out $12,173.94.

[1] It further appears that there was a copartnership of Evenson & Utterberg and a corporation known as Evenson & Utterberg, Inc. The note which the bank held was signed "Evenson & Utterberg, Inc.," and was indorsed by Mr. Evenson and Mr. Utterberg. It permitted the application of deposits to the payment of the note, whether due or not. All moneys deposited in the bank, whether payable to Evenson & Utterberg or Evenson & Utterberg, Inc., were deposited in the one account. The proceeds of loans made by Evenson & Utterberg, Inc., were credited to the same account. The names "Evenson & Utterberg" and "Evenson & Utterberg, Inc.," appear to have been used indiscriminately. Checks were honored upon the account, whether they were signed by the firm or by the corporation. The plaintiff itself made no distinction between the firm and the corporation, and there is no claim made by Evenson & Utterberg that the bank did not have the right to make the application of the funds in their account to the payment of this note. The note was not due when the bank applied the deposit to its payment.

The plaintiff has sued the bank for the $11,023.53 applied to the payment of the note. Its claim is that the bank had no right to apply the deposit of this money, which was payable to the firm and deposited in the firm's account, to the payment of the note of the corporation; that the money which it took was impressed with an equity or trust in favor of the plaintiff, or belonged to the plaintiff, for the purpose of paying for labor and material furnished for the Lincoln School; and that, having paid materialmen subsequent to the taking of this money by the bank, the plaintiff, by right of subrogation and by right of the assignment contained in the application, is entitled to recover the money.

There seems to be no merit in the contention that the bank took funds of the partnership and applied them to the debt of the corporation. The facts indicate that there was no distinction between the firm and the corporation; that both were composed of these two individuals; and, furthermore, it is apparent that the plaintiff must recover, if at all, on the strength of its own, rather than the weakness of the bank's, title to the fund.

[2] It is well-settled law that, where a surety upon a contractor's bond, such as this one was, has paid a claim which it was obligated to pay if its principal did not, it has a right to retained percentages which is superior to that of an assignee of the fund, and that its right of subrogation dates back to the time of the issuance of the bond. Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; National Surety Co. v. Berggren, 126 Minn. 188, 148 N. W. 55; Barrett Bros. v. County of St. Louis, 165 Minn. 158, 206 N. W. 49.

[3] It is equally well settled, at least in the state of Minnesota, that, where payments are made to a public contractor unconditionally, under a contract such as is involved here, he can use the money so paid in any way he desires, and the payment is not subject to any equity. Jefferson v. Church of St. Matthew, 41 Minn. 392, 43 N. W. 74; Miller v. Shepard, 50 Minn. 268, 52 N. W. 894; Board of Commrs. of Redwood County v. Citizens' Bank, 67 Minn. 236, 69 N. W. 912; American Bridge Co. v. Honstain, 113 Minn. 16, 128 N. W. 1014; Villaume Box & Lumber Co. v. Condon, 146 Minn. 156, 178 N. W. 492; Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291.

In the Jefferson Case, Jefferson & Kasson, lumber dealers, had furnished material to contractors for the construction of a church to the extent of $400. The church owed the contractors $657, and paid them $600 by a check payable to their order. The check was taken to Jefferson & Kasson, and they were told to apply it on the account of the contractors, which included $1,700 of prior indebtedness having nothing to do with the church. Jefferson & Kasson knew that the check was paid by the church. They applied the entire $600 to the prior account. The court held that they had a right to make that application, and said: "In the absence of any express stipulation or arrangement between the parties interested in respect to its application, communicated to the plaintiffs at the time, the latter were at liberty to apply it as they did."

In Standard Oil Co. v. Day, supra, the situation was, on principle, the same. McGree, Moos & Co. had entered into a contract with the state to pave a portion of a highway. The usual public contractor's bond was given. The Day-De Veau Motor Transportation Company was a subcontractor, and did the hauling of certain material on the job. It purchased oil and gas from the Standard Oil Company, to whom it owed about $3,400 on a prior account. This indebtedness was unsecured, and had nothing to do with the work covered by the bond. The transportation company received from Mc-

Gree, Moos & Co. $41,801.77 for the hauling, and paid to the Standard Oil Company $5,-250. The Standard Oil Company applied this money to the payment of the unsecured indebtedness, leaving a balance unpaid for material furnished on the work for which the surety company was liable. It was held that the oil company had a right to so apply the payment, although it knew that the money was in payment for material and labor furnished in connection with the paving of the highway. The court said: "Our public contractor's bond contemplates that the contractor will receive and disburse his money as suits his convenience. The original contractor in this instance could have protected itself by requiring a bond from the subcontractor. It may have done so. Where the bond is furnished, the surety must recognize the possible occurrence of what here did occur as one of the perils of its business. In other words, one who becomes surety takes the risk that honest payment of unsecured debts may leave a deficiency which the surety must make good."

The court also said, speaking of contractors: "When they receive their money unconditionally, it is their own, and they may do with it as they please. If a creditor must stop, before he accepts payments from his debtor, and make the impertinent inquiry as to his standing with his surety, the unsatisfactory results are obvious. Such a position not only gives undue regard to the surety, but is in utter disregard of the right to make private contracts and the obligation thereof. Suppose his tailor is delivering a suit of clothes which he has made for the subcontractor, and the latter tenders payment in funds which the tailor knows came from the work covered by a surety bond; must the tailor refuse it, or take it clothed with an equity that, perchance, later permits the surety to take it away from him? A surety is not entitled to such judicial mercies. The tailor has business perils of his own. The business of sureties is inherently one of constant peril, and their imperative watchfulness for their general protection makes it less burdensome for them to guard against the emergency here under consideration, and our view tends more to the stability of ordinary business."

We have, then, the two rules in Minnesota that the surety under a public contractor's bond has, upon payment of a claim for which it is liable, the right of subrogation to retained percentages which is superior to the rights of an ordinary assignee, and that, when the contractor receives payment and pays money to a creditor who has no knowledge of any stipulation or arrangement between the parties interested, the surety has no right to require any other or different application of it.

[4] It is contended by the plaintiff in this case that, in view of the agreement between Mr. Sullivan, its agent, and the firm of Evenson & Utterberg, and by virtue of the assignment contained in the application, the $11,-023.53 taken by the bank was not unconditionally paid to the firm, but was subject to a condition that it be applied to the payment of bills for labor and material, and that this gives it the right to recover from the bank. It must be kept in mind that, up to the time the checks were deposited, the surety had not paid out one dollar on account of its bond; that it had not communicated the existence of the claimed assignment to either the bank or the school district; that, upon the deposit of the checks in the bank, the bank took title to them and became the debtor to Evenson & Utterberg for the amount of the checks, and had an absolute right to apply the checks to the payment of the note unless some rule of law forbade it. So far as the payment to Evenson & Utterberg by the school district is concerned, it was an unconditional payment. The school district had no stipulation nor agreement with them, and no agreement with the plaintiff, except that the checks should be sent to Mr. Sullivan. It recognized no right of the plaintiff to the money called for by the checks.

[5] The question, then, arises as to whether the arrangement between Mr. Sullivan and Evenson & Utterberg created an equity in these checks, then representing unretained, instead of retained, percentages, which would give the surety company a superior right to that of the bank. I am satisfied that it had none under its right of subrogation, and that the doctrine of subrogation cannot be used for the purpose of recovering moneys which have been legally paid to persons having no notice, in satisfaction of just claims prior to the maturing of any right of subrogation. United States Fidelity & Guaranty Co. v. Wooldridge, 268 U. S. 234, 45 S. Ct. 489, 69 L. Ed. 932, 40 A. L. R. 1094; in which it is said that the doctrine of relation is not allowed to defeat the collateral rights of third persons lawfully acquired. It seems apparent that the assignment was of no assistance to the plaintiff, so far as this particular situation was concerned.

Assuming its validity and effectiveness, it was given for the protection and benefit of the plaintiff, and could be waived by it. The

consent by the plaintiff to the issuance of checks payable to Evenson & Utterberg, and its delivery of these checks to Evenson & Utterberg, constituted a waiver. The plaintiff had these checks in its custody, and had it within its 'power to protect itself absolutely from what occurred. Instead of adopting suitable methods for its own protection, it chose to turn over these checks to Evenson & Utterberg, not upon condition that the proceeds of the checks should be turned over to it for the payment of claims for labor or material, nor upon any agreement that the proceeds should belong to it for that purpose, but upon an agreement of the firm that these checks would be deposited in their general account, for the purpose of taking care of the checks issued for the payment of labor and material. In other words, the plaintiff surrendered its custody and control of these checks in consideration of a promise by the firm that they would deposit the money in their bank account, upon which they had issued checks. It traded the checks for the promise. Its conduct was inconsistent with an intent to claim title to the checks, or the money represented by them, under the assignment.

There is grave doubt whether, even if there was such an equity as is claimed by the plaintiff, it could recover from the bank. See Commercial National Bank v. Stockyards Loan Co. (C. C. A.) 16 F.(2d) 911, and cases cited. It is not necessary, however, to decide that question. It would appear that in no event could the surety recover $11,023.53. The amount of the checks which were to be paid out of the deposit of $14,923.34 was $10,550.41, and it does not appear that there was any condition attached to the use of the balance by Evenson & Utterberg. Furthermore, two of the checks, amounting to $1,462, were paid out of the deposit. It would seem to be almost impossible to determine, on the plaintiff's theory, what portion of the $14,923.34 was impressed with this equity. Was it the money, or a part of the money, which the bank took, or was the $4,372.93, which was in excess of the amount necessary to meet the checks, subject to this equity? It would seem unjust to require the bank to pay back $10,550.41, or that amount less $1,462, and permit Evenson & Utterberg to have the benefit of the portion of the deposit which they took, and it would also seem that, if the court attempted to adjust the rights of the parties on the theory advanced by the plaintiff, the bank ought to be put in as good a position as it would have been in if it had known that $10,550.41 was appropriated to the

payment of the checks to materialmen, and that the balance was not so appropriated.

I have reached the conclusion, however, that, as between the bank and the surety company, the $11,023.53 which the bank applied in payment of the note was not subject to any equity which would permit the surety company to recover it, and that the rule of law laid down in the Jefferson Case and in the Standard Oil Company Case is applicable. While I think that the penalty which the plaintiff suffered by reason of its error in turning over these checks to Evenson & Utterberg is too severe, and that, as a matter of ethics, it was more entitled to the money than the bank, because, but for an unfortunate mistake, the bank would never have had it, I am unable to formulate any rule to bring about that result which would not do violence to established rules of law or be thoroughly impractical in general operation.

The defendants may have a decree of dismissal, with costs.