## FARMERS STATE BANK OF WAUBUN v. S. J. ANDERSON AND OTHERS.[1]

November 22, 1935.

No. 30,490.

[1]Reported in 263 N. W. 443.

See 191 Minn. 467, 254 N. W. 580; 194 Minn. 484, 260 N. W. 869.

*Oscar R. Knutson,* for appellants.

*L. A. Wilson,* for respondent.

I. M. OLSEN, JUSTICE.

Defendants S. J. Anderson and Western Surety Company appeal separately from an order denying their motion to have the findings of fact and conclusions of law amended, or, if that be denied, then for a new trial.

The order, as far as it denies the motion to amend the findings of fact and conclusions of law made by the trial court, is not appealable, but errors in the findings and conclusions may be reviewed on appeal from the order denying the motion for a new trial, or, in a proper case, on appeal from the judgment. Taylor v. C. G. W. R. Co. 163 Minn. 46, 203 N. W. 434; Sullivan v. Ebner, 195 Minn. 232, 262 N. W. 574.

The defendant S. J. Anderson had a contract with the state of Minnesota for the construction of part of a state highway in Becker county. The defendant Western Surety Company is the surety on his contractor's bond, given to the state as provided by statute. Anderson sublet to one Phillips a part of the work to be done under this contract. Phillips contracted to do hauling of earth and sand for filling for a part of the highway. He employed a crew of men and trucks to do the work. He started in with eight trucks and later employed more men and trucks so that he had some 25 trucks and the necessary men. Phillips paid his help twice a month. He was to receive payment from Anderson once a month as the estimates of the work done on the job were paid to Anderson by the state. Phillips commenced work on the job about September 20, 1932. He had an account in the plaintiff bank and prior to October 20 deposited some money therein, but not sufficient to cover his pay roll. Prior to October 20 he had issued checks for payment of labor on the job in excess of his deposit credit. The bank at first refused to honor the checks in excess of his deposit,

but, after being assured by Phillips that he had an estimate which would be paid in a few days, honored checks making an overdraft on his account of over $400. Another pay roll payment was due by Phillips about October 20. On that day he sent one of his employes to the bank to try to obtain a loan of $1,500 to meet this pay roll. The cashier wanted some assurance and something to show that the loan would be paid out of the next estimate to be paid by the state. The cashier called up Mr. Anderson's office at Ogema, some eight miles distant from Waubun, where the bank was located, and made inquiry as to what Phillips had coming and as to when the estimate would be paid; also whether or not Anderson would protect the bank. He also inquired if Anderson would sign an order for payment of the loan. He was assured by the person answering the telephone in Anderson's office that there would be coming to Phillips within the next week or so more than $1,500 on the next estimate and that they would take care of the matter if the bank advanced the money; also that they would accept and sign an order for the payment of the loan out of the money coming to Phillips on the next estimate. In reliance on this assurance, the bank agreed to loan Phillips $1,500 to take up the $400 overdraft and to take care of his pay roll then coming due. It was understood that the money was to be used only to pay for labor and material claims incurred in the work. The bank then prepared a deposit slip for $1,500 and a note to be given by Phillips to the bank for that amount. The note was made payable October 31, 1932. The deposit slip and note were taken back by the employe to Phillips and signed by him. Thereafter the bank credited to Phillips the amount of the overdraft and paid out the full amount of the credit balance obtained by the loan on checks issued by Phillips in payment of labor and some small material items going into the job. The $400 overdraft was for labor on the job, with the exception of some small items which the court found aggregated about $68. On October 28, 1932, the bank, in conformity with the understanding had with Anderson or his office manager in the telephone conversation above mentioned, made out an order in words and figures as follows:

"Waubun, Minn.
Oct. 28, 1932.

"S. J. Anderson, Contractor,
"Ogema, Minnesota.
"Dear Sir:

"Kindly pay Farmers State Bank of Waubun the money due me on that certain estimate payable next from the above date, and oblige."

This order was signed by Phillips and on the same day was signed:

"Accepted this 28 day of October, 1932.
"S. J. Anderson, Contractor
"Per A. F. Schirber"

—and the order so signed was delivered to the bank.

The monthly estimates upon which payments were made by the state on this job were handled as follows: The state dealt with the contractor Anderson only on the estimates, and the estimates were made to cover all work done on the highway in question, whether that work was done by Phillips, by Anderson himself, or by another party who seems to have had a subcontract or been employed by Anderson to do work. These estimates were prepared in Anderson's office and were forwarded to the state highway department and payments made thereon as approved by the department. Anderson claims that he did not receive payment on the estimate covered by the order hereinbefore quoted until November 30, 1932. He received at that time on that estimate $23,306.05. Out of this amount Phillips' share is conceded to have been in excess of the $1,500 claimed by the bank. The exact amount of Phillips' share in this estimate is not clearly shown. As far as we can tell from the evidence, it amounted at least to something over $4,000. This money was received by Anderson, but he failed to pay it over to the bank as provided by the order.

Phillips, at the time he took the subcontract, had given a bond on which the Central West Casualty Company was the surety. It appears that about the time Anderson claims he received payment of this estimate from the state this surety company notified him

not to make any further payments to Phillips. This Central West Casualty Company, however, has made no further claim or appearance in the matter and appears to be out of the picture. There is a statement in the record that it is insolvent and has gone out of business.

There is in evidence a letter, exhibit 8, written on the letterhead of S. J. Anderson, Contractor, Warren, Minnesota, dated November 25, 1932, reading as follows:

"Farmers State Bank,
"Waubun, Minnesota.
"Gentlemen:

"In reply to your letter of the 23rd, we are sorry to say that the estimate for which we have been waiting has not yet come in. However you need not be greatly concerned about the Phillips note as we will forward our check to you just as soon as the money is received. We too are very anxious to have this matter cleared up and will do so as soon as possible.

"Yours very truly,
"S. J. ANDERSON
"S. J. Anderson
"Per A. F. Schirber."

Exhibits 9 and 10 are letters signed in the same way, written in December, 1932, and January, 1933, referring to the Central West Casualty Company's demand that no further money be paid to Phillips, but stating that there would be sufficient money to pay the bank and that the casualty company had been asked to release the money. Under date of February 22, 1933, the defendants' attorney, Oscar R. Knutson, in whose hands the matter had been placed by the defendant Anderson, wrote to plaintiff's attorney, stating among other things:

"I am hoping that this matter can be ironed out between your bank and the Central West Surety Co. If not, I feel that the only safe course for Anderson to pursue would be to pay this money into court and let you litigate it with the other party making claim thereto. I assure you that I am willing to do anything I can to

co-operate with you to the end that your client may be paid, as long as the rights of my client are not prejudiced thereby. He is perfectly willing to pay this money over as soon as we know that it is safe to pay it to either one party or the other."

The Western Surety Company, as far as appears, has not made any claim to this money at any time. Its answer in the case sets up no claim, but denies all allegations of the complaint except paragraphs 1, 2, 3, 4, and 5 thereof. It presents no affirmative claim to the money here in question. The defendant Anderson's answer in the case is the same as the answer of the Western Surety Company.

1. It appears from the evidence that the order given to the bank for payment of this estimate to the bank was not signed by Anderson personally but by A. F. Schirber, the man in charge of his office, Anderson not being present. The letters above mentioned were also signed by Schirber in the name of Anderson. On the trial it was contended by Anderson that Schirber had no authority to agree orally with the bank to protect it on its loan to Phillips or to accept and sign the order for payment to the bank of the money coming to Phillips on the estimate in said order referred to. The authority of Schirber to receive the order and to write the letters mentioned is not seriously contested. The court found that Schirber had authority to sign these writings. As far as Anderson is concerned, this appears to raise the decisive question in the case.

We think it well appears from the evidence that Schirber had charge of Anderson's office at Ogema during the times here in question; that most of the time Anderson was not in the office, but out superintending the work; that all the clerical and other work and correspondence in the office was done by Schirber under direction of Anderson; that Schirber had authority to accept orders given by workmen for payment by Anderson out of wages coming to them; that he prepared estimates under Anderson's directions; that he issued all checks; and that, as far as appears, he had complete charge of matters in the office, subject to such inspection and directions as Anderson might make. Schirber's authority seems to have been very extensive and to have gone much

beyond the mere clerical work. We think the evidence is sufficient to sustain the findings of the court that Schirber had authority to deal with the bank and accept and sign the order for payment of the estimate in question to the bank.

All of the money paid out by the bank was used for the payment of items of labor and materials on the project, except the sum of $68.84, according to the findings of the court.

At the trial defendant Anderson made the general claim that he did not know of the bank loan and the order until toward the end of February, 1933. He further claimed that about that time claims began to be presented to him for amounts owing on outstanding claims against Phillips and that he paid out the money here in question on such claims. His evidence as to that is very incomplete and indefinite. He does testify that something like $6,600 in such claims had been paid. The evidence, however, indicates that Phillips had earned and was entitled to more than $1,500 in excess of all such claims, and we cannot hold that the court was in error in not finding that Anderson had paid out all money due to Phillips on claims against Phillips on this job. Again, there were no claims against Phillips presented until some considerable time after Anderson had received the money which he had agreed to pay into the bank to take care of the bank loan. His testimony is not persuasive. He failed to produce his books and records, and time and again answered questions by saying he did not know or could not tell without having his books or records to find out what the facts were.

2. It is argued that the order and acceptance were void, under the statute of frauds, as being an agreement to pay the debt of another. We construe it to be an agreement by Anderson to pay over to the bank an indebtedness of his own owing to Phillips for work done under the contract.

3. It is further claimed that under the contract Anderson was not required to pay Phillips until Phillips furnished evidence of full payment of all claims for labor and materials incurred in the work. But the contract contains the further provision that Ander-

son could waive this requirement. He did so waive it by accepting the order.

4. Under the cases of New Amsterdam Cas. Co. v. Wurtz, 145 Minn. 438, 177 N. W. 664; Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738; and Standard Oil Co. v. Remer, 167 Minn. 352, 209 N. W. 315, the rights and equities of the plaintiff bank were superior to those of Anderson and of the Western Surety Company in the particular fund covered by the order accepted by Anderson and given to the plaintiff. The order and acceptance thereof operated as an assignment of the fund.

The evidence sustains the findings and conclusions imposing liability on Anderson.

5. It does not follow that the Western Surety Company is liable under its bond as surety for Anderson. The conditions of its bond are that it shall be liable for the payment of all claims due for work, materials, etc. incurred in completion of Anderson's contract. The surety company was not a party and did not consent to the order or assignment of this fund made by Anderson to the bank. The bank did not take any assignments from those who had performed the labor or furnished the supplies. It simply paid the checks issued by Phillips therefor and seeks recovery of this fund on the strength of the order. It is not shown that the surety company has received or retained any of the particular fund in question. The evidence does not sustain the findings and conclusions imposing liability on defendant Western Surety Company. Barrett Bros. Co. v. County of St. Louis, 165 Minn. 158, 206 N. W. 49; Hartford A. & I. Co. v. Federal Constr. Co. 168 Minn. 202, 209 N. W. 911; First Nat. Bank v. O'Neil, 176 Minn. 258, 223 N. W. 298; First Nat. Bank v. Hagquist, 177 Minn. 194, 225 N. W. 11.

There are a number of assigned errors upon the findings of the trial court. As far as these errors relate to the surety company, they are well founded. As far as they relate to Anderson's liability, they are not such as to require a reversal. We do not extend this opinion further by going into the particulars as to these assigned errors.

6. In appellants' brief it is pointed out that the court permitted recovery of attorneys' fees and interest at the rate of eight per cent per annum against Anderson. We find no assignment in the motion for a new trial, or here, directed to this particular point, or anything to show that it was raised or considered by the trial court.

The order appealed from is reversed as to the Western Surety Company and affirmed as to S. J. Anderson.

[1]Reported in 263 N. W. 436.