Dickson *v.* United States Fidelity & Guaranty Co.*

(Division B.   May 21, 1928.)

[117 So. 245.   No. 27187.]

\*Corpus Juris-Cyc. References: Indemnity, 31CJ, p. 438, n. 77; Trial, 38Cyc, p. 1292, n. 8; Trusts, 39Cyc, p. 57, n. 20.

*F. H. & F. J. Lotterhos,* for appellant.

*Butler & Snow,* for appellee.

Argued orally by *F. J. Lotterhos,* for appellant, and *George Butler,* for appellee.

ANDERSON, J. Appellee brought this action in the circuit court of Hinds county against appellant, to recover one thousand four hundred forty-five dollars and three cents on an indemnity bond executed by the latter in favor of the former. There was a trial on the pleadings alone, resulting in a judgment in favor of the appellee for the amount sued for. From that judgment appellant prosecutes this appeal.

The trial was had on the demurrer of appellee to appellant's three special pleas to the declaration. The demurrer was sustained, and appellant given leave to plead further, which he declined. Thereupon judgment was entered in favor of appellee for the amount demanded in its declaration. Before pleading, however, appellant made application to transfer the cause to the chancery court, setting up as grounds therefor substantially the same matters and things set up in his special pleas, to which demurrers were sustained. The trial court entered an order refusing to transfer the cause to the chancery court.

Appellee's declaration, leaving off its formal parts and exhibits thereto, follows:

"That the plaintiff, United States Fidelity.& Guaranty Company, was on or about the 1st day of August, 1925, and at all times since has been, and is now, a corporation organized and existing pursuant to the laws of the state of Maryland and a resident and citizen of that state, conducting what is usually and customarily known as a surety company business, and duly authorized and admitted to transact such business within the state of Mississippi, and the defendant, A. L. Dickson, was on said

date, and at all times since has been, and is now, a resident of the city of Jackson, First district of Hinds county, Miss.

"That on or about the 1st day of August, 1925, one Jas. F. Garber, entered into a certain written contract with W. J. Clancy for the construction of a brick building at Jackson, Miss., and on or about the 11th day of August, 1925, the plaintiff, at the instance and request of the defendant, executed as surety, along with Jas. F. Garber as principal, a certain written bond and obligation, as provided and contemplated by chapter 128, Mississippi Laws of 1918, a copy of which said bond and contract is herewith referred to and made a part hereof the same as if fully copied herein, and made Exhibits A and B, respectively, hereto, and thereby and thereunder, and under and by virtue of said chapter 128, Laws of 1918, the said Jas. F. Garber and the plaintiff were obligated to make payments to all persons furnishing labor or material under said contract, and said bond inured to the benefit of all persons furnishing labor or material under said contract.

"Plaintiff would further show that, in consideration of the plaintiff executing said bond, the said defendant then and there executed and delivered to the plaintiff a certain written obligation, whereby and wherein he undertook and agreed for himself and heirs, executors, or administrators that he would at all times save harmless and keep indemnified the said plaintiff, its successors and assigns, against all suits, actions, debts, damages, costs, charges, and expenses incurred, court costs counsel's fees, at law or in equity, and against all loss and damage whatever that shall or may at any time happen or result to said plaintiff, its successors or assigns, for or by reason of the suretyship and bond aforesaid, and said obligation contained other stipulations and agreements not necessary to here set out, all of which will more fully appear by reference to a copy of said written ob-

ligation marked Exhibit C hereto, and made a part hereof the same as if fully copied herein.

"Plaintiff would further show that the said Jas. F. Garber made default in the performance of said contract secured by said bond and then and there failed, neglected, and refused to make payments to the Warburton-Beacham Supply Company in the sum of four hundred sixty-nine dollars and fifty-eight cents, on account of labor and material furnished the said Barber under said contract; and then and there failed, neglected, and refused to make payments to the Jackson Hardware Company in the sum of one hundred five dollars and five cents, for material furnished under said contract; and then and there failed, neglected, and refused to make payments to the Jackson Brick Company, a corporation, in the sum of six hundred twenty dollars and forty cents, for material furnished, all of which said materials and labor went into the construction of said building and was secured by the obligations of said bond.

"That by reason of said default the plaintiff, on or about January 24, 1927, was required to pay, and did pay, the said Warburton-Beacham Supply Company the said sum of four hundred sixty-nine dollars and fifty-eight cents, and on or about May 19, 1927, was required to pay, and did pay, the said Jackson Hardware Company the said sum of one hundred five dollars and five cents, and became liable to pay the Jackson Brick Company the sum of six hundred twenty dollars and forty cents.

"Plaintiff would further show that on October 18, 1926, it incurred traveling expenses in connection with said bond in the sum of one dollar, and on January 8, 1927, it incurred the further sum of five dollars and ninety-six cents, and on March 5, 1927, the further sum of three dollars and seventy-five cents as traveling expenses, in connection with said bond.

"Plaintiff would further show that it has incurred counsel's fees in connection with said bond in a reasonable sum, which plaintiff avers to be three hundred dollars, and that, by reason of the matters hereinbefore set forth, the said defendant under said indemnity agreement become, was, and is liable to the plaintiff for the several sums hereinbefore mentioned, and although plaintiff has often requested the payment thereof, the defendant has hitherto failed to pay the same, or any part thereof, to the damage of the plaintiff in the sum of one thousand four hundred ninety-five dollars and three cents, for which sum the plaintiff brings this suit and demands judgment, together with all costs of this proceeding."

One of the appellant's special pleas, leaving off its formal parts, is in this language:

"Comes the defendant by his attorneys, and for a further plea in this behalf says that the plaintiff ought not to have or maintain its aforesaid action against him because he says that:

"After the plaintiff became surety of said Garber for the faithful performance of the building contract with said Clancy, and after the execution of the indemnity bond sued on and while the performance of the building contract with said Clancy was being carried on and the building was under construction, the plaintiff became the surety for said Garber under terms and conditions similar to those of its suretyship under the contract with Clancy for the faithful performance by said Garber of another and different building contract for the erection of a building for Rathborne, Hair & Ridgway Company, in Hinds county, Miss., a copy of which surety bond is here to the court shown as Exhibit A to this plea (copies of which building contract with said Rathborne, Hair & Ridgway Company are not available to this defendant, but are available to the plaintiff, wherefore this defendant does not exhibit copies thereof with this plea); and

that while said Garber on or about the months of January, February, and March, 1926, was erecting the building provided for in his said contract with Clancy he was also erecting the said building provided for in his said contract with Rathborne, Hair & Ridgway Company, for the faithful performance of each of which contracts plaintiff was surety as aforesaid; and that as the work progressed under said contract with Clancy payments were made thereon by said Clancy to said Garber, from which payments and the final payment under said contract, which was made by said Clancy, to said Garber upon the completion of the said contract, on or about the month of March, 1926, all accounts and obligations of said Garber for labor and materials used in the performance of said contract with Clancy, including those mentioned in plaintiff's declaration, should have been paid, and that instead of making such payments for labor and materials used in the performance of said contract with Clancy out of the payments so received from said Clancy, said Garber while acting as the plaintiff's principal in both of plaintiff's said suretyships, on or about the months of January, February, and March, 1926, used large sums of the money so paid him by Clancy for the payment of labor and materials used in the performance of his said contract with said Rathborne, Hair & Ridgway Company, in excess of the sums which plaintiff in its declaration says it had been required to pay out and become liable for under its said suretyship in the matter of the contract with Clancy; and that said Garber did not fully perform his said contract with said Rathborne, Hair & Ridgway Company by completing the work and fully paying for all labor and materials used thereunder and therein, and that accordingly the plaintiff as surety for said Garber under the said Rathborne, Hair & Ridgway Company contract was required to pay out large sums of money as such surety amounting to about the sum of seven hundred eighteen dollars and ten cents; and that, except for payments for

labor and materials used in the said performance of the Rathborne, Hair & Ridgway Company contract out of said proceeds received under the Clancy contract, the plaintiff as surety would have incurred liability for and been required to pay and expend much larger sums under said Rathborne, Hair & Ridgway Company contract and suretyship, such payments out of the proceeds of the Clancy contract on obligations incurred under the Rathborne, Hair & Ridgeway Company contract and suretyship being in excess of the amount sued for herein, and in excess of any liability incurred or discharged by plaintiff under its suretyship under the contract with Clancy; and that the proceeds of the Clancy contract so used to pay for labor and materials under the Rathborne, Hair & Ridgway Company contract served to that extent to save the plaintiff harmless under its suretyship in the Rathborne, Hair & Ridgway Company matter; and that this exceeded in amount the sums which plaintiff alleges it was required to pay out and become liable for under its suretyship under the contract with Clancy; and that accordingly the plaintiff has suffered no loss or damage under said contract between Garber and Clancy under its said suretyship thereunder, or under the alleged indemnity bond of this defendant; and that the alleged sums of money which plaintiff may have been required to pay or may have incurred liability for under the said Clancy contract and plaintiff's suretyship might, should, and would have been fully paid out of the said proceeds of the Clancy contract but for the said use of funds received thereunder for the payment of labor and materials under the said contract with Rathborne, Hair & Ridgway Company in reduction of the amount of the plaintiff's liabilities and losses under the Rathborne, Hair & Ridgway Company contract and plaintiff's suretyship thereunder; and that said Garber fully performed said contract with said Clancy and received therefor and thereunder payments in excess of any amounts which plaintiff

became liable for or had to pay out under its suretyship and in excess of the amount of labor and materials used under said Clancy contract for the payment of which plaintiff was surety.''

Another of appellant's special pleas is in the same language as the plea quoted above, except there is added thereto the following:

''And that the plaintiff accepted the benefits and thereby acquiesces therein under its said suretyship in the Rathborne, Hair & Ridgway Company matter in reduction of its liability therein of the payments for labor and materials thereunder out of the proceeds of the said payments received under the said contract with Clancy and is estopped to demand of the defendant as set forth in plaintiff's declaration.''

Appellant's other special plea follows:

''Comes the defendant by his attorneys, and for a further plea in this behalf says that the plaintiff ought not to have or maintain its aforesaid action against him in so far as it is based on and seeks to recover six hundred twenty dollars and forty cents, for the payment of which plaintiff alleges it is liable to the Jackson Brick Company because he says that the plaintiff has not paid the sum of six hundred twenty dollars, forty cents, or any part thereof. All of which the defendant is ready to verify.''

The trial court committed no error in refusing to transfer the cause to the chancery court, for the cause is one of legal, not equitable, cognizance. And, furthermore, under section 147 of the Constitution, if the circuit court had erred in refusing to transfer the cause to the chancery court, this court could not reverse the judgment on that ground alone.

It will be observed from the bond sued on that appellant agreed and bound himself to ''at all times save harmless and keep indemnified the United States Fidelity & Guaranty Company . . . against all suits, actions, debts, damages, costs, charges, and expenses, including

court costs and counsel fees, . . . by reason of the suretyship of the United States Fidelity & Guaranty Company.''

One question is whether the bond sued on indemnified appellee, the indemnitee therein, against loss alone, or both liability and loss, as surety on the contractor's bond. We think it plain from the language of the bond, above quoted, that the bond was one indemnifying appellee against liability as well as loss, and therefore appellee did not have to wait until loss occurred before it had a right of action on the bond. Appellee's right of action arose at once upon its becoming liable as surety on the contractor's bond. 31 C. J. 438, section 33; 14 R. C. L. 55-57, section 13. *United States Fidelity & Guaranty Co.* v. *Bank,* 128 Miss. 605, 91 So. 344, is not decisive of this question either way.

Section 3 of chapter 128, Laws of 1918 (Hemingway's Code 1927, section 2598), provides:

''When any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, shall enter into a bond with such person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may insert therein, such bond shall also be subject to the additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract; and in the event such bond does not contain any such provisions for the payment of the claims of persons furnishing labor or material under said contract, such bond shall nevertheless inure to the benefit of such person furnishing labor or material under said contract, the same as if such stipulation had been incorporated in said bond; and any such person who has furnished labor or materials used therein; for which payment has not been made, shall have the rights to inter-

vene and be made a party to any action instituted on such bond, and to have his rights adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the rights or claim for damages or otherwise, of the obligee. If the full amount of the liability of the surety thereon is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the obligee, the remainder shall be distributed *pro rata* among said interveners. The bond herein provided for may be made by any surety company authorized to do business in the state of Mississippi.''

Prior to the adoption of chapter 128, Laws of 1918, Hemingway's Code of 1927, sections 2596 to 2603, inclusive, money due a contractor under a building contract was not impressed with any trust or equity in favor of materialmen and laborers furnishing materials and labor going into the construction of a building. Such funds, under the contract, belonged to the contractor absolutely, who had the right to assign or otherwise dispose of them as he saw fit, although to the prejudice of such laborers and materialmen. *Spengler* v. *Lumber Co.*, 94 Miss. 780, 48 So. 966, 19 Ann. Cas. 426; *Strickland Lumber Co.* v. *Rheinhart,* 115 Miss. 749, 76 So. 643; *Delta Lumber Co.* v. *Trust Co.,* 123 Miss. 722, 86 So. 590; *First National Bank* v. *Monroe County,* 131 Miss. 828, 95 So. 726. But that is not true now since the adoption of that statute unless the contractor gives the bond provided by section 3 of the statute (section 2598, Hemingway's Code 1927), quoted above. If the contractor does not give the bond provided by the statute, laborers and materialmen have an equity under section 1 of the statute, Hemingway's Code 1927, section 2596, in the funds due the contractor by the owner of the building. But where the bond is given as provided by the statute, such funds are released from such equity or trust in favor of materialmen and laborers and go into the hands of the contractor untrammeled. The purpose of the bond section of the

statute was to provide for the protection of materialmen and laborers, the bond being in lieu of their equity in the funds arising out of the building contract. The bond provided by the statute has the same purpose and effect as the bond required of a contractor doing public work by section 1, chapter 217, Laws of 1918 (Hemingway's Code 1927, section 2617). Construing the latter statute, in the case of the *First National Bank* v. *Monroe County, supra,* the court held that there was nothing in the statute forbidding a contractor to pay his creditors out of any money due him, or to become due under the contract, to the exclusion of laborers and materialmen.

The reasoning of the supreme court of Minnesota in *Standard Oil Co.* v. *Day,* 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291, where the main question here involved was under consideration and the authorities reviewed, appeals to us as sound. We quote from the opinion in that case:

"A surety may direct the application of payments between the principal and creditor only when the funds are not owned by the debtor and are subject to some equity in favor of the surety. *Merchants' Ins. Co.* v. *Herber* [168 Minn. 420, 71 N. W. 624], *supra*; *Ganley* v. *City of Pipestone,* 154 Minn. 193, 191 N. W. 738.

"The position of appellant assumes that a surety has a right that the earnings of the contractor under his contract shall be applied upon the labor and material going into the structure when no such agreement is stated in the bond or provided by statute. Our public contractor's bond contemplates that the contractor will receive and disburse his money as suits his convenience. . . .

"The authorities that hold contrary to our view do so upon the theory that such moneys are impressed with an equity in favor of the surety that entitles it to have the money applied in payment of liabilities incurred by the contractor under the contract. If such an equity exists as against a creditor, who has a current account

arising out of the contract and also an account incident to some other and prior transaction that prevents the creditor and his debtor agreeing that moneys which the creditor has received from payments under a particular contract shall be applied upon such prior indebtedness, it would seem that, upon the same logic and reason, if this same creditor's claim consisted exclusively of the old account, he could not safely accept such moneys, with knowledge of their source, upon the old account. The money should still be subject to such equity in favor of the surety, and if the rule is followed to its logical conclusion the surety in case of loss could recover the payment from the general creditor. . . .

"Most contractors and subcontractors must necessarily use some of their money that they receive in payment of obligations not incurred in the particular contract from which their money is received. When they receive their money unconditionally, it is their own and they may do with it as they please. If the creditor must stop, before he accepts payments from his debtor and make the impertinent inquiry as to his standing with his surety, the unsatisfactory results are obvious. . . .

"We hold that such funds are not under such circumstances impressed with an equity in favor of the surety. In the consideration of this matter we have considered the original contractor in the same situation as his surety for the purpose of this case. The claim of appellant is well answered by the court in *People [Use of Hirth]* v. *Powers,* 108 Mich. 339, 66 N. W. 215, wherein the court says: 'Again to do so is to say that one who furnishes labor and material cannot receive payment for former labor or material furnished elsewhere, although the contract by which that sought to be recovered for . . . expressly provided for such payment. It assumes that the sureties have a right that the earnings of the contractor under his contract shall be applied upon the labor and material going into the building, when no such agree-

ment is stated in the bond or provided by statute. If it were the law, it would seem to follow that a contract to build a house, or to render services as a subcontractor, in consideration of an existing indebtedness, could not be enforced against sureties who had signed a bond that the contractor or subcontractor should fulfill his contract. This bond did not, in terms, provide that the contractor should apply his earnings to pay the laborers or material-men, and the statute does not provide for such a bond. It undertook that the contractor should perform his personal obligations in his own way. It contemplated that he would receive and disburse his money as should suit his convenience. This contention depends upon an alleged equity that the money earned shall be applied only upon the account for materials furnished for the particular job. It is not supported by the letter of the bond or statute, and we think it is not supported by authority.' ''

The contract between the owner of the building and the contractor provides for progress payments by the former to the latter, and for a final certificate of acceptance by the architect in this language: ''Before issuance of final certificate the contractor shall submit evidence satisfactory to the architect that all pay rolls, material bills, and other indebtedness connected with work have been paid;'' and that, before the owner shall make final payment to the contractor, he shall deliver written notice to appellee, the surety, and get appellee's written consent thereto. The contract between the owner and contractor is made a part of appellee's surety bond. It is argued that these provisions in the contract impressed the funds arising out of the contract with a trust or equity in favor of materialmen and laborers whose materials and labor went into the building. We think this contention is without merit. Those provisions of the building contract are not inserted for the protection of materialmen and laborers, where they are protected by the contractor's bond, as here. They do not provide that payments for

materials and labor shall be paid out of the funds due the contractor by the owner. The contractor is left free to pay out any funds he may have.

.We hold, therefore, that so far as appellant's rights are concerned, the case stands exactly as if appellee had not been a surety on the Rathborne, Hair & Ridgway contract. The builder having given bond, under the statute, with surety, for faithful performance of each of the contracts, the moneys coming to him thereunder were freed from any equity or trust which the laborers or materialmen might have had therein if the bonds had not been given. They were moneys belonging to the contractor to do with as he chose.

*Affirmed.*