JESCO, INC., Plaintiff,

v.

**JEFFREYS STEEL COMPANY, INC.,** Great Dominion Corporation, Federal Pipe and Steel Corporation, Branch Banking and Trust Company and East Coast Steel, Inc., Defendants.

Civ. A. No. EC 82–180–WK–P.

United States District Court, N.D. Mississippi, E.D.

Aug. 24, 1983.

F.M. Bush, III, Tupelo, Miss., for plaintiff.

Joseph O. Kulakowski, Mobile, Ala., for Jeffreys Steel.

Charles E. McCartney, Jr., Shelby, N.C., for Great Dominion.

John H. Henley, Jackson, Miss., for Federal Pipe.

Dewitt T. Hicks, Jr., Columbus, Miss., and Hayden J. Silver, III, Charlotte, N.C., for Branch B & T.

Jimmy B. Fisher, Corinth, Miss., for East Coast.

## MEMORANDUM OPINION

KEADY, District Judge.

In this interpleader action, plaintiff, Jesco, Inc., as stakeholder, sues defendants, Jeffreys Steel Co., Great Dominion Corp., Federal Pipe and Steel Corp., Branch Banking and Trust Co., and East Coast Steel, Inc., to determine proper disposition of a fund of money owed by plaintiff to Great Dominion, in which the other defendants claim rights. The Court now has for decision defendant Branch's motion for summary judgment on its claim to the interpleaded funds, plaintiff's motion for summary judgment against defendant Branch on Branch's counterclaim, and Branch's counter-motion for summary judgment on its counterclaim against plaintiff. A brief exposition of the undisputed facts will aid in our analysis.

On November 5, 1981, plaintiff entered into a contract with Kimberly Clark Corp. whereby plaintiff agreed to act as general contractor on a construction project in Corinth, Mississippi. In furtherance of the construction project, plaintiff purchased certain materials from Great Dominion, becoming indebted to Great Dominion in the sum of $156,848.61. The materials provided to plaintiff by Great Dominion were in turn supplied to Great Dominion by Federal Pipe, Jeffreys Steel, and East Coast Steel. Branch Banking and Trust alleges that it is a secured creditor of Great Dominion with a perfected interest in that company's accounts receivable, including the debt owed by plaintiff to Great Dominion.

Jesco commenced this interpleader action on June 22, 1982, by depositing with the Clerk of Court the sum of $156,848.61. Plaintiff's complaint alleged that it was indebted to Great Dominion in this amount, and that several of Great Dominion's creditors, the other defendants herein, had asserted claims to these monies. Each defendant filed an answer claiming all or part of the interpleaded funds. Additionally, Branch asserted its counterclaim against plaintiff for any monies paid by plaintiff to Great Dominion subsequent to plaintiff's receipt of notice that Branch had a perfected security interest in Great Dominion's accounts receivable.

In first addressing Branch's motion for summary judgment on its claim to the interpleaded funds, we begin by noting the familiar standard that summary judgment may be granted only if it appears from the pleadings and evidentiary materials submitted, considered in the light most favorable to opposing parties, that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. *Cubbage v. Averett*, 626 F.2d 1307, 1308 (5th Cir.1980).

As stated, Branch asserts a perfected security interest in Great Dominion's accounts receivable which would preclude recovery of the interpleaded funds by any of Great Dominion's other creditors. Federal Pipe urges that Branch's security interest in the interpleaded funds was not properly perfected under Mississippi law, contending that the accounts receivable from plaintiff, a Mississippi corporation, on a project located within this state becomes property located in Mississippi, and that therefore Branch's failure to file a U.C.C. financing statement with Mississippi's Secretary of State leaves its security interest unperfected.

However, as Branch correctly points out, Miss.Code Ann. § 75–9–103(3)(b) (1972) provides that, "the law ... of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or non-perfection of the security interest." Great Dominion, the debtor on the secured obligation, is a North Carolina corporation; hence, under § 75–9–103(3)(b) North Carolina law governs the perfection vel non of Branch's security interest in Great Dominion's accounts receivable, including those funds owed by plaintiff.[1] As established by

---

1. Miss.Code Ann. § 75–9–105(1)(d) (1972) makes it clear that the "debtor" to which § 75–9–103(3)(b) refers is "the person who owes payment or other performance of the obligation secured;" in the instant case, Great Dominion, a North Carolina corporation, and

the uncontested affidavit, with supporting exhibits, of Jack Isaacs, a Branch vice president, Branch properly perfected its security interest in Great Dominion's accounts receivable in accordance with N.C.Gen.Stat. § 25–9–401(1)(c), by filing financing statements with the North Carolina Secretary of State and with the Register of Deeds in the debtor's county of business. Therefore, we find as a matter of law that Branch has a properly perfected security interest in the interpleaded funds.

Federal Pipe further claims that, regardless of this security interest, it (and presumably Great Dominion's other suppliers as well) has a priority lien upon these funds under Miss.Code Ann. § 85–7–181 (1972). That statute provides in part that,

> [w]hen any contractor ... shall not pay any person who may have furnished materials used in ... construction ... the amount due him to any subcontractor therein ... any such person, subcontractor ... may give notice in writing to the owner thereof of the amount due him and claim the benefit of this section; and, thereupon the amount that may be due upon the date of the service of such notice by such owner to the contractor ... shall be bound in the hands of such owner for the payment in full....

*Id.* However, Federal Pipe's reliance on Mississippi's materialmen's lien statute is misplaced. The Mississippi Supreme Court has consistently held that this statute affords no protection to a subcontractor of a subcontractor, or to a supplier of a supplier. *See, e.g., Redd v. L & A Contracting Co.,* 246 Miss. 548, 151 So.2d 205, 207 (1963) (trial court's demurrer to complaint of unpaid sub-subcontractor asserting lien upon funds owed to subcontractor affirmed on ground that predecessor of § 85–7–181 did not permit unpaid sub-subcontractor to bind funds owed by primary contractor); *Gammill Co. v. Guesnard,* 167 Miss. 868, 150 So. 214, 215 (1933) (subcontractor of subcontractor cannot give effective stop notice); *Alabama Marble Co. v. USF & G,* 146 Miss.

414, 111 So. 573, 574 (1927) (same). Further, as this federal district court has previously held,

> The right to acquire a lien under § 372 [predecessor statute of § 85–7–181] is limited to persons engaged by the original contractor, and does not extend to others who supply materials or labor at the request of a subcontractor. Thus, remote materialmen ... are not so protected.

*Monroe Banking & Trust Co. v. Allen,* 286 F.Supp. 201, 207 (N.D.Miss.1968).

■ It is undisputed that Great Dominion was a supplier, by subcontract or otherwise, of the plaintiff, who was general contractor on the Kimberly Clark project, and that Federal Pipe, Jeffreys Steel and East Coast Steel were in turn either suppliers or subcontractors of Great Dominion. (Deposition of David Richardson, Vice President of Jesco, at 4, 7–8; Deposition of Robert Dickens, President of Great Dominion, at 7–8). Under controlling Mississippi precedent, it is therefore patent that § 85–7–181 affords these remote materialmen no right to assert a lien against the interpleaded funds.

Likewise, we find no merit in the suppliers' contentions that they have an equitable lien upon the interpleaded funds or, alternatively, that they possess a quantum meruit claim against plaintiff. Under *Dickson v. USF & G,* 150 Miss. 864, 117 So. 245, 248 (1928), where the contractor has given bond, as here, unless the statutory provisions of [the predecessor to] § 85–7–181 apply, *no lien, either at law or in equity, may be asserted against monies due a contractor under a construction contract or purchase order.*

■ Finally, as to Federal Pipe's quantum meruit claim, we note the Mississippi Supreme Court's decision in *Redd v. L & A Contracting Co.,* 246 Miss. 548, 151 So.2d 205 (1963), where in holding that the materialmen's lien statute had no application to funds due a subcontractor of a subcontrac-

---

not the account debtor, Jesco, a Mississippi corporation, *see* Miss.Code Ann. § 75–9–

105(1)(a) (1972) (definition of "account debtor").

tor, the court also denied the sub-subcontractor's quantum meruit claim since there was no privity between the sub-subcontractor and the general contractor. *Id.* at 208–09. As the court stated, "a sub-subcontractor cannot sue on quantum meruit for work done under an express contract with another person." *Id.* at 208. In the case *sub judice,* there has been no allegation, let alone any evidence presented, of privity between Jesco and Great Dominion's remote suppliers.[2]

In sum, we find that no genuine issue as to any material fact exists with reference to Branch's claim to the interpleaded funds. Moreover, as the Fifth Circuit has held, "the mere fact that the [parties] vigorously disputed the legal conclusions to be drawn from the facts presented . . . was no bar to the grant of summary judgment." *Sagers v. Yellow Freight System, Inc.,* 529 F.2d 721, 728 n. 13 (5th Cir.1976). Therefore, Branch Banking and Trust Co. is entitled to summary judgment on its claim to the interpleaded funds as a matter of law.

■ We next address plaintiff's motion and defendant Branch's counter-motion for summary judgment on Branch's counterclaim against plaintiff for recovery of any monies paid by plaintiff to Great Dominion after plaintiff received notice that Branch had a perfected security interest in Great Dominion's accounts receivable. The parties vigorously contest whether a May 7, 1982, telephone conference between Jack Isaacs, Vice President of Branch, and David Richardson, Vice President of Jesco, in which Isaacs informed Richardson that Branch was "financ[ing] Great Dominion's receivables" (Richardson Dep., at 40), was adequate to apprise Jesco that Branch had a perfected security interest in, and an assignment of, Great Dominion's accounts, and was therefore entitled under Miss.Code Ann. § 75–9–318(3) to receive payment directly from Jesco. It is not disputed that

on May 11, 1982, four days after Isaacs' telephone call to Richardson, Jesco hand-delivered a check for approximately $67,000 to one of Great Dominion's truck drivers, and it is this sum which is the subject matter of Branch's counterclaim.

The essential issue with which we are now confronted involves the nature of the notice given to Jesco by Branch; specifically, what did Richardson know and when did he know it? Jesco maintains that its payment to Great Dominion on May 11 was entirely proper in light of Branch's failure to provide proof of its security interest, coupled with Robert Dickens' (President of Great Dominion) May 10 denial that Branch was financing Great Dominion's accounts receivable. (Richardson Dep., at 43). Branch counters that Jesco did not request proof of the security interest until *after* payment had been improperly made.

It is unnecessary for the Court to address each point of contention—and they are numerous—for it is clear that material facts, upon which the issue of ultimate liability hinges, are genuinely disputed, thereby precluding summary judgment for either party on Branch's counterclaim.

Accordingly, let an order issue granting summary judgment to Branch's claim to the interpleaded funds and denying Branch's motion and Jesco's motion for summary judgment on Branch's counterclaim against Jesco.

## JUDGMENT

Pursuant to Memorandum Opinion this date released, it is

ORDERED

1. That Branch Banking and Trust Company is hereby GRANTED summary judgment on its claim to funds interpleaded by Jesco, Inc. in the sum of $156,848.61, that Branch Banking and Trust Company is

---

**2.** As for Federal Pipe's final contention that plaintiff is not indebted to Great Dominion because Great Dominion damaged Jesco and the construction project, the record before the court contains no evidence of such damage, nor has any been alleged. Moreover, Federal Pipe

has not offered any affidavits or other evidence which would support this claim, as required by Fed.R.Civ.P. 56(e). Indeed, in paragraph 9 of its Answer to Jesco's Amended Complaint, Federal Pipe admits that Jesco is indebted to Great Dominion in the amount of $156,848.61.

hereby adjudged to be entitled to said funds and the Clerk of this Court is directed to disburse the said funds, together with interest accumulated thereon, to Branch Banking and Trust Company.

Pursuant to Rule 54(b), Fed.R.Civ.P., the Court determines there is no just reason for delay of entering final judgment on the aforesaid claim and hereby directs entry of final judgment thereon.

2. The motion of Branch Banking and Trust Company against Jesco, Inc., for summary judgment and Jesco, Inc.'s counter-motion for summary judgment against Branch Banking and Trust Company on the counterclaim of Branch Banking and Trust Company against Jesco, Inc. be DENIED and the case remain for trial with respect to that issue.