IRVING, J.,
Dissenting.
¶ 36. The majority affirms the judgment of the trial court granting partial summary judgment to W & W Plumbing and Heating, Inc. and awarding W & W the sum of $25,105.27 from funds interpled into court by Noble House, Inc. I am of the opinion that the majority has overlooked some glaring errors committed by the trial court and as a result has arrived at an erroneous decision. Consequently, I dissent. I would reverse and render the judgment in favor of W & W.
¶ 37. This matter began with Noble House filing an interpleader action. Francis J. Ransom d/b/a Ransom Construction Company, and W & W Plumbing and Heating, Inc. were made defendants. In its complaint, Noble alleged (1) that it entered into a contract with Ransom for construction of a low-income multi-unit dwelling at a cost of $407,689 under the Home Investment Partnership Program in conjunction with the Adams County Board of Supervisors, (2) that as a condition of the subject construction contract, Ransom obtained a performance and surety bond from Cumberland Surety Insurance Company, Inc.,[4] (3) that Ransom had materially breached the contract resulting in considerable damage to Noble, (4) that W & W served as Ransom’s plumbing subcontractor on the project and that Ransom owed W & W a balance of approximately $25,105.27 for plumbing work performed on the project, (5) and that a final payment in the amount of $72,356 was to be made upon completion of the project but because of the damages and economic loss caused by Ransom’s breach, Noble had withheld payment of the final installment. In the prayer of its complaint, Noble asked that a judgment be entered “in its favor against Ransom in an amount to be determined at trial, equal to its economic loss and damages resulting from Ransom’s breach of the subject construction contract.” Noble further requested that the court “enter an order directing the Chancery Clerk of Adams County, as the present custodian of the final payment, to pay such funds into the registry of [the] court to be held in an interest bearing account during the pen-dency of [the] litigation.”
¶ 38. Noble never alleged that W & W was entitled to any of the interpled funds, just that Ransom owed money to W & W.
¶ 39. W & W answered Noble’s complaint and admitted that it was Noble’s subcontractor on the project and that Noble owed it $25,105.27 for work performed. *388 W & W asked to be paid out of the monies withheld and that it be dismissed from the action, leaving the remaining parties to litigate their differences. It is significant that while W & W stated that it was owed the money as alleged in Noble’s complaint, it did not make any claim against either Noble or Ransom. It simply alleged that it had performed all the work in a workmanlike manner required of it under its subcontract.
¶ 40. Ransom answered Noble’s complaint and admitted that W & W was a subcontractor on the project. Ransom did not specifically deny that he owed W & W $25,105.27 as alleged in paragraph eleven of Noble’s complaint. However, he did deny generally that he owed W & W for plumbing work as alleged in paragraph eighteen of Noble’s complaint. Finally, Ransom alleged that he was entitled to the entire $72,356, and in his counterclaim, which was also filed with his answer, Ransom demanded an additional $31,877.29 from Noble which he alleged was due him as a result of Noble’s breach of the contract.
¶41. In W & W’s motion for partial summary judgment, it alleged:
All parties hereto, both in the complaint of Noble House, Inc. and the separate answer of Francis J. Ransom d/b/a Ransom Construction Company, set forth and allege that this defendant, W & W Plumbing & Heating, Inc., has completed the terms of his [sic] contract, the basis of the monies interpled into this court pursuant to M.R.C.P. 22. Further, both parties by the same pleadings, specifically set forth and agree that this defendant is entitled to the sum of $25,105.27, being due and payable from December 1, 1996. That no other set of facts involve this defendant as a party to this action .... [t]hat there is no genuine issue of material fact on the issue of paying this defendant the sum of $25,105.27, plus accrued interest and dismissing it as a party to this action, as a matter of law.
¶ 42. On April 15, 1997, Noble responded to W & W’s motion for partial summary judgment in pertinent part as follows:
[T]here exist genuine issues of material fact which preclude summary judgment in W & W’s favor. Specifically, and contrary to W & W’s assertions, the sum total allegedly owed to W & W is not undisputed. Although NHI [Noble House, Inc.] has set forth in its pleadings that certain monies are due W & W for work done on the subject housing project, the figure relied upon was furnished to NHI by W & W and its attorney, without prove [sic] or substantiation of the same. Hence, NHI has alleged that “approximately” $25,105.27 is due W & W. This figure is subject to proof by W & W, as well as proof by NHI and Ransom, as to the accuracy of the same and whether any reductions or setoffs apply.
¶ 43. On April 22, 2000, Noble, with new attorneys, filed another response to W & W’s motion for partial summary judgment. In that response, Noble again admitted that Ransom owed money to W & W for plumbing work done on the project but denied that W & W was entitled to any of the interpled fund. Noble specifically alleged that W & W had “no legal or factual basis that would entitle it to even assert, much less prevail, on its assertion that it is somehow entitle [sic] to receive any amount or portion of the funds previously interpled or any other sum or amount paid or unpaid.”
¶44. On November 2, 2000, the trial court entered an order in which it ordered and adjudged (1) that W & W had no claim against Noble and had not asserted any counterclaim against Noble other than *389 to the interpled funds, (2) that W & W had not asserted any cross-claim against Ransom Construction Company other than to the interpled funds, and (3) that W & W would be allowed to remain as a nonparticipating interpleader defendant throughout the duration and conclusion of the action, with a claim to the interpled funds, “for the reasons stated in the record.” Presumably, those reasons were that W & W had been made a party defendant by Noble and that Noble had alleged that W & W was owed money by Ransom as a result of work that W & W had performed for Ransom on the project. In an earlier order, the trial court had ordered that the issue of the interpled monies should be bifurcated and held in abeyance until the primary issue between Noble and Ransom had been adjudicated.
¶ 45. On August 13, 2002, the trial court granted partial summary judgment to W & W, finding that “upon the evidence heard in open court,” there was no genuine issue of fact that W & W was due the monies contracted for as the subcontract was properly completed. More specifically, the trial court found:
(1) that the work done by W & W was specifically requested by both parties, Francis J. Ransom d/b/a Ransom Construction Company and Noble House, Inc., and that all services sought were done and completed according to the specifications of both parties and the amount claimed, i.e., $25,105.27 is undisputed, (2) that [W & W was] not entitled to a claim against Noble House, Inc., [but that it was] entitled to payment from the sum interpled with the Court for which this issue was joined and for which it was made a party.
Additionally, the trial court found that W & W was entitled to payment of $25,105.27 from the interpled funds.
¶ 46. Sometime after the trial court granted summary judgment to W & W, Noble and Ransom presented an agreed judgment of dismissal to the trial court in which they agreed that the case should be dismissed with the interpled funds divided equally between them and disbursed accordingly. The trial judge, sua sponte, modified the agreed judgment to reflect that W & W be paid $25,105.27 and the remainder of the interpled funds be disbursed equally between Noble and Ransom. The agreed judgment as modified sua sponte by the trial court was executed on October 3, 2002, and entered on October 4.
¶ 47. At some point after October 4, Noble and Ransom filed a letter with the clerk of the court advising that they would be appealing the court’s October 3 order and requesting that the funds not be disbursed. The court was apprised of the letter and as a result, entered an order on October 17 in which the court stated that it would hold a hearing on October 28 to allow the remaining parties to show cause why the interpled funds should not be disbursed in accordance with the court’s order of October 3.
¶ 48. On October 24, Noble and Ransom, apparently in response to the court’s October 17 order, filed a joint motion seeking relief from the court’s October 3 order. They alleged that neither NHI nor Ransom agreed to the terms and conditions which the court placed on the agreed judgment of dismissal previously provided to the court and that the court was without factual or legal authority to modify the agreed judgment of dismissal submitted by them. They further argued that the court’s modification of the agreed judgment completely abrogated the terms and conditions of the agreed judgment and that as a result there was no longer an agreement between the parties. Additionally, *390 Noble and Ransom alleged that “at no time since W & W Plumbing purportedly performed work on the construction project for Ransom, has it filed any sort of stop notice, statutory stop notice, claim, lawsuit or other type of action against Noble House, Inc.” They further argued that W & W had no contractual relationship with Noble which would cause it to be entitled to any of the funds.
¶ 49. On October 28, the trial court entered an order in which it found that the “court’s order for disposition of the inter-pleaded funds should stand” and that the October 28 order “shall constitute the final order or judgment in this case, and that any applicable time periods for appeal shall commence to run upon the filing” of the October 28 order.
¶ 50. Neither the trial court nor the majority offers any basis for finding that W & W was entitled to be paid out of the interpled funds other than the fact that W & W was made an interpleader defendant and had performed work on the project. It appears to me that both the trial court and the majority have confused W & W’s right to be paid, with its right to be paid from the interpled funds. No right accrued to W & W to be paid from the interpled funds simply because it had done work on the project and had not been paid for it. Indeed, it seems the majority recognized as much when it quoted from our decision in Chic Creations of Bonita Lakes Mall v. Doleac Electric Co., 791 So.2d 254, 257(¶10) (Miss.Ct.App.2000), “[t]he Rule 22 interpleader action provides only the procedural vehicle to assert claims to the specific funds. The rule by itself cannot be the basis for a pro-rata distribution. In order for the subcontractors to assert a valid claim to this fund they must do more than show that they are owed money by the contractor. They must demonstrate how they are entitled to a portion of this particular fund.... ”
¶ 51. Having recognized the appropriate law, the majority then proceeds to ignore it. Therefore, I find no need to further address the rationale offered by the majority for its erroneous decision, for the opinion, in my humble judgment, misses the point.
¶ 52. Without a doubt, W & W had a remedy, but the question is whether its remedy was to be paid out of the interpled funds even if it had not followed the proper procedure to allow it to reach those funds. On the facts before us, that answer is a resounding no. In the balance of this opinion, I will attempt to explain why I believe the judgment of the trial court and the decision of the majority are misguided.
¶ 53. Ransom posted a performance bond in connection with his contract with Noble. Noble and the Board of Supervisors of Adams County were the obligees under the performance bond.
¶ 54. Mississippi Code Annotated section 85-7-185 (1972) provides:
When any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, shall enter into a bond with such person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may insert therein, such bond shall also be subject to the additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract; and in the event such bond does not contain any such provisions for the payment of the claims of persons furnishing labor or material under said contract, such bond shall nevertheless inure to the benefit of *391 such person furnishing labor or material under said contract, the same as if such stipulation had been incorporated in said bond, and any such person who has fu/mished labor or materials used therein; for which payment has not been made, shall have the right to intervene and be made a party to any action instituted on such bond, and to have his rights adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the rights or claim for damages or otherwise, of the obligee....
(emphasis added).
¶ 55. Once the bond was posted, all funds due Ransom under the construction contract were released from liens or attachments of laborers and materialmen. Dickson v. United States Fidelity & Guaranty Co., 150 Miss. 864, 878, 117 So. 245, 246 (1928).
¶ 56. As stated, this case started with Noble filing an interpleader action in which it named W & W as a defendant. Initially, Cumberland, the surety of Ransom’s performance bond, was not a party to the litigation. Prior to Cumberland being made a party defendant, W & W had no legal basis whatsoever to any portion of the interpled funds. Its sole recourse at that time would have been to institute an action against Ransom and Cumberland, forcing Cumberland to make good on its obligation as surety in compliance with the requirements of section 85-7-185.
¶ 57. When Noble brought Cumberland into the case, W & W had the right under section 85-7-185 to intervene and have its rights adjudicated. Miss.Code Ann. § 85-7-185 (1972). Since W & W was already in the case when Cumberland was made a party defendant, there was no need for a motion to intervene on the part of W & W. However, W & W was required to initiate at that time a cross-claim against Ransom and Cumberland in order to have its rights adjudicated as permitted by the statute. W & W never did so. I have throughly searched the record and find that W & W never filed any sort of claim against Ransom or Cumberland. The record does reveal that W & W was given an opportunity by the trial judge to do so, but W & W declined, choosing instead to file only an amended response to Noble’s complaint.
¶ 58. Since W & W failed to follow the statute which provided the remedy for it to have its rights adjudicated, I find that the trial court erred in adjudicating W & W rights to the interpled funds. But, even if W & W’s response and amended response could be considered an assertion of a cross-claim against Ransom and Cumberland, and they certainly cannot, the trial court still committed reversible error in ordering that W & W’s claim for $25,105.27 enjoyed priority status over Noble’s claim. Again, section 85-7-185 makes it clear that W & W could not have priority over the obligee, for the rights of any materialmen or laborer, who intervenes in a suit brought against the surety on the bond of a contractor, are subject to the priority of the rights or claim for damages or otherwise, of the obligee. Miss. Code Ann. § 85-7-185 (1972).
¶ 59. I also find that the trial court erred in modifying the agreed judgment submitted to it by Noble and Ransom. For sure, the trial court was not obligated to sign the order as presented, but since it was an agreed judgment containing the terms and conditions upon which the parties were basing the resolution of their dispute, the court’s only alternative would have been to submit the court-modified agreed judgment to the parties for their acceptance or rejection. If rejected, the court’s only option would have been to set the matter down for hearing and resolu *392 tion on the merits, requiring Noble to go forward and present its case.
¶ 60. For the reasons presented, I would reverse and render rather than reverse and remand because W & W was given a fair opportunity to have its claim to the interpled funds properly adjudicated in accordance with the provisions of section 85-7-185. It failed to present its claim. It now must bear the consequences of its decision.

. Later, Noble amended its complaint to make Cumberland a defendant. In its amended complaint, Noble alleged that Ransom and Cumberland were jointly liable to it as a result of Cumberland’s being the surety on Noble’s performance bond.